**In re Carol Bolger MONTOYA, Debtor.**

**Bankruptcy No. 2–88–00124.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Dec. 15, 1988.

Erick R. Alden, Columbus, Ohio, for debtor.

Dale K. Perdue, Columbus, Ohio, for Chippewill Condominium Unit Owners Ass'n.

ORDER ON MOTION TO HOLD CHIPPE-WILL CONDOMINIUM UNIT OWN-ERS' ASSOCIATION IN CIVIL CON-TEMPT

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court after reopening of this case to hear a motion filed on behalf of debtor Carol Bolger Montoya, seeking a finding of contempt against the Chippewill Condominium Unit Owners' Association ("Chippewill"). The motion was opposed by Chippewill and was heard by the Court.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) and (I) in which this bankruptcy judge may enter a final order.

## FACTUAL FINDINGS

Certain facts in this matter were uncontested and were stipulated by the parties as follows.

On July 27, 1977 the debtor purchased certain real property located at 4777 Smoketalk Lane, Westerville, Ohio (the "Property"). On July 29, 1987, Transamerica Financial Services Company ("Transamerica"), holder of a mortgage against the Property, filed a complaint in foreclosure in the Court of Common Pleas of Franklin County, Ohio. A judgment and decree of foreclosure was entered by the state court on December 11, 1987, and the Property was sold by sheriff's sale. An order confirming that sale and ordering distribution was not entered until August 10, 1988.

On January 11, 1988, the debtor filed her petition under the provisions of Chapter 7 of the Bankruptcy Code. The statement of intention included with the initial filings in that case indicated that she would be surrendering the Property. Chippewill was listed as a creditor and received notice of the bankruptcy filing.

On March 8, 1988, Chippewill filed a complaint against the debtor in Franklin County Municipal Court. That action was initiated to collect certain condominium association fees attributable to 1988. On June 2, 1988, the debtor received a discharge in bankruptcy from this Court and soon thereafter, this case was closed as a no-asset case.

In addition to the stipulated facts, the Court also finds that the debtor resided in the Property from the time of her bankruptcy filing on January 11, 1988 until September 1, 1988. That occupancy was at the request of Transamerica, which purchased the Property at the foreclosure sale. Apparently Transamerica preferred keeping the Property occupied until the sheriff's sale could be confirmed and the deed could be transferred. It is not known why that process took a number of months to complete.

## ISSUES OF LAW

The debtor asserts that Chippewill's suit against her in state court was enjoined by the automatic stay against such actions in operation during her bankruptcy case and later, by the provisions of the discharge order. See 11 U.S.C. § 362(a) and § 524. In response, Chippewill contends that its suit was initiated solely to collect fees which first became due after the filing of the bankruptcy and was not intended to enforce a pre-petition obligation affected by the discharge injunction.

The obligation sought to be enforced represents an acceleration of fees for the year 1988. Because condominium ownership fees may be assessed only against an owner of property, Chippewill maintains that the debtor is responsible for the post-petition portion of such fees so long as she is the legal owner of the Property.

Chippewill further argues that it provided services in 1988 for the benefit of all condominium units in the development and could not account for services only to a particular unit. As the debtor at least indirectly may have received the benefit of such services, Chippewill believes she should be forced to pay the share of such fees attributable to her interest.

The debtor's rejoinder to Chippewill's assertions is that she herself received no benefit from the services, and even if the value of the Property were somehow enhanced by the services, none of that enhanced value enured to her because she received no proceeds from the foreclosure sale. Any obligations to lienholders against the Property which were not satisfied from proceeds of that sale were discharged through her bankruptcy.

The Court took the matter under advisement to review the condominium association statutes under Ohio law, the declaration of condominium ownership and the by-laws of Chippewill and to consider the impact of the debtor's post-petition occupancy of the property.

## CONCLUSIONS OF LAW

The Court has reviewed several opinions with factual circumstances similar to those

present in this matter. That review reveals the following.

Bankruptcy Judge Schmetterer, sitting in the northern district of Illinois, has determined that a discharge granted to a debtor in a Chapter 13 case does not bar enforcement against a debtor of an obligation for condominium association fees for periods of occupancy of the condominium after the Chapter 13 bankruptcy was commenced. *In re Harvey,* 88 B.R. 860 (Bankr.N.D.Ill. 1988). The theory adopted by Judge Schmetterer was that fees attributable to post-petition occupancy were not included within the scope of the Chapter 13 discharge pursuant to 11 U.S.C. § 1328(a) because such obligation was not provided for by the plan and was a long term debt which exceeded the length of the plan. *Harvey* at 862–863. Accordingly, attempted collection of such fees by the creditor did not violate the discharge injunction.

On the other hand, Judge Katz, another judge in the northern district of Illinois, in a Chapter 7 case, held that debtors' condominium association fees coming due after the filing of their bankruptcy case were discharged pursuant to 11 U.S.C. § 727(b) because such fees were merely an unmatured obligation, included as a claim by 11 U.S.C. § 101(4)(A) and, accordingly, within the scope of the discharge. *In re Rosteck,* 85 B.R. 73 (Bankr.N.D.Ill.1988). The *Rosteck* court found that the discharge was to be broadly construed to preserve the debtors' fresh start and the association's attempt to collect such fees violated the discharge injunction. *Rosteck* at 75–76. The Rostecks had abandoned their condominium unit prior to their bankruptcy filing.

The Court in *Stern v. Munroe (In re Stern),* 44 B.R. 15 (Bankr.D.Mass.1984), held that the trustees of a condominium association were not barred by the automatic stay imposed by 11 U.S.C. § 362(a) from instituting an action during the pendency of a bankruptcy case for the purpose of establishing a lien for condominium common expenses accruing after the bankruptcy case was commenced. *Stern* did not discuss the issue of the debtor's personal liability, however.

*In re Case* involved Chapter 13 debtors who proposed to surrender their condominium unit to the holder of a deed of trust while retaining the right to redeem the unit from the foreclosure proceeding and the right to transfer ownership by private sale. In that circumstance, the Bankruptcy Court held that the debtors could not "reject" their obligation to pay fees pursuant to the condominium association agreement. *In re Case,* 91 B.R. 102 (Bankr.D.Col.1988). Judge Matheson found that the retention of attributes of ownership such as redemption and sale powers meant the debtors could not partially reject the association contract by classifying it as an executory contract.

█ Synthesis of the existing case law compels the Court to find that fees assessable against a debtor pursuant to a declaration of condominium ownership and the by-laws of a unit owner association may be discharged as an unmatured claim where the debtor abandons the condominium and all rights associated with such ownership before or upon the bankruptcy filing. The debtor may "walk away" from personal liability for such future assessments when a discharge is granted pursuant to 11 U.S.C. § 727(b) if the condominium association were properly scheduled as a creditor. In that situation, the association is limited to its lien rights against the condominium unit. Analysis of the facts in this matter indicate greater similarity to those in *Rosteck* than in *Harvey* and are distinguishable from the facts in *Case.*

█ The debtor's rights in the condominium unit, including her equity of redemption, had been cut off prior to her bankruptcy filing by the passage of time subsequent to the state court's judgment and order of sale in the foreclosure action. All that remained was conveyance of the deed from the sheriff to Transamerica. Although the debtor retained a statutory right to redeem the property by payment of the amount of the judgment and costs prior to confirmation of the foreclosure sale pursuant to Ohio Revised Code § 2329.33, she had indicated surrender of that right at the time of her bankruptcy filing by her deci-

sion to surrender the unit, as set forth in the Statement of Intention filed at the commencement of her bankruptcy case. The debtor's occupancy of the unit subsequent to that time was temporary and was at the request of the purchasing mortgagee.

In the specific circumstances found in this case, the Court finds that the policies underlying the fresh start, implemented by the grant of the discharge in bankruptcy, would be unacceptably compromised if the debtor's personal liability for condominium association dues continued after the date of her bankruptcy filing. Under the declaration of condominium ownership and the applicable state statutes, Chippewill continues to possess its lien rights against the unit, but has no rights to enforce personal liability against the debtor. All personal obligations arising from her ownership of the condominium unit were made legally unenforceable by the issuance of her discharge in bankruptcy.

Consistent with the foregoing, Chippewill's attempt to establish and enforce personal liability on the part of the debtor for condominium association fees attributable to 1986 is a violation of the discharge injunction of 11 U.S.C. § 524. The debtor's motion to hold Chippewill in contempt is, therefore, sustained. Because no actual damages were established arising from Chippewill's actions, however, damages will not be awarded.

IT IS SO ORDERED.