**In re James Clare RYAN and Sandra Marie Ryan a/k/a Sandra Marie Hooker, Debtors.**

**Bankruptcy No. 84 B 11616.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 2, 1989.

---

Howard Joelson, Olympia Fields, Ill., for debtors.

Pamela Buchholz of Teller, Levit & Silvertrust, P.C., Chicago, Ill., for Woodhaven Ass'n.

Thomas Raleigh, Chicago, Ill., trustee.

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This matter comes before the Court on the Debtor's Petition for Certification of Contempt against the Woodhaven Association for an alleged violation of the automatic stay provision of the Bankruptcy Code.

### Jurisdiction

This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons set forth below, the Court finds that Woodhaven has not violated the permanent injunction of § 524(a) of the Bankruptcy Code, and is not in contempt of court. The following constitutes the Court's findings of fact and conclusions of law, pursuant to Bankruptcy Rule 7052.

### Facts

On August 31, 1977, JAMES CLARE RYAN and SANDRA MARIE RYAN [Debtors] purchased a condominium property, a vacation camping lot in Woodhaven Lakes. Woodhaven Lakes is a campsite development owned by the WOODHAVEN ASSOCIATION, INC. [Woodhaven]. The rights, responsibilities and obligations of the unit owners in the association are set forth in the Illinois Condominium Property Act, Ill.Rev.Stat., ch. 30, ¶¶ 301 et seq. (1987) [Condominium Act] and the Declaration of Covenants [Declaration].[1] The Condominium Act and the Declaration authorize the Board of Managers of Woodhaven to levy annual assessments against the campsites. These annual fees are levied on March 31 of each year.

On September 18, 1984, the Debtors filed a joint Chapter 7 petition under the United States Bankruptcy Code [Code]. At some point prior to filing this case, the Debtors gave up possession of the property.[2] The Debtors listed the condominium property as an asset and included as a debt in their A–3 Schedule, Woodhaven's claim for assessment fees from 1982 through 1984 ($1,875.00). On November 6, 1984 the Trustee filed a no-asset report, which was approved by the Court on November 7, 1984. On May 16, 1985, the Court entered an order discharging the Debtors from all debts dischargeable in the Chapter 7 case. And, on August 30, 1985, the case was closed.[3]

It is undisputed that at all relevant times, Woodhaven was aware of the Debtors' Chapter 7 bankruptcy petition and their eventual discharge. On September 21, 1987, Woodhaven brought suit against the Debtors in state court for breach of contract, allegedly seeking to collect assessments for the period after the filing of the Chapter 7 case and attorney's fees, in the sum of $1,379.00. On October 21, 1987, Woodhaven obtained a default judgment against the Debtors for said amount.

On December 31, 1987, the Debtors filed a "Petition for Certification of Contempt" against Woodhaven. The Debtors ask the Court to hold Woodhaven in contempt for

---

1. A declaration of covenants is analogous to a condominium declaration. Rohan and Reskin, *Condominium Law and Practice*, § 3.02 n. 9 (1987).

2. It is not clear when and how the Debtors communicated to the Association the fact that they no longer wished to use the condominium property.

3. The closing of the Chapter 7 case resulted in the abandonment of the condominium property by the Trustee. *See* 11 U.S.C. § 554(c). *See also, Behrens v. Woodhaven Ass'n.*, 87 B.R. 971 (N.D.Ill.1988). The effect of abandonment is the reversion of title to the property to the debtor. *See, In re Strelsky,* 46 B.R. 178 (E.D.Va. 1987).

obtaining the judgment in violation of the automatic stay.

### Discussion

As a preliminary matter, the Court must clarify the procedural posture of this case. The Debtors cite the automatic stay as authority for their petition. *See,* 11 U.S.C. § 362. The automatic stay bars creditors from attempting to collect prepetition debts, in order to give the debtor a more effective "fresh start." *In re Smurzynski,* 72 B.R. 368 (N.D.Ill.1987). But the protection afforded by the automatic stay is only temporary and expires: (1) at the time the case is closed, § 362(c)(2)(A); (2) at the time the case is dismissed, § 362(c)(2)(B), or (3) upon the entry or denial of a discharge, § 362(c)(2)(C). In this case, the state court suit was commenced after the Debtors' discharge. Thus, the automatic stay was inapplicable. The Debtors' motion, however, does allege a violation of the permanent injunction of 11 U.S.C. § 524(a).[4] That section prohibits creditors holding discharged debts from commencing an action to collect that debt. Accordingly, the Court will analyze this proceeding pursuant to § 524(a) of the Code, rather than § 362.

For purposes of this case, the permanent injunction of § 524(a) prohibits creditors of these Debtors from attempting to collect on or to assert personal liability for any debt discharged pursuant to § 727 of the Bankruptcy Code. Subparagraph (b) of § 727 provides in pertinent part:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section *discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case.* (emphasis added)

Woodhaven concedes the fact that the prepetition assessments have been discharged. But Woodhaven does dispute the Debtors' characterization of the postpetition assessments as a discharged prepetition debt.

The Debtors contend that their liability for the postpetition assessments debt was a contingent and unliquidated claim at the time they filed their Chapter 7 case, which was included in their A–3 schedule and discharged by the Court.[5]

Woodhaven, on the other hand, asserts that the debt was not a discharged prepetition debt because the debt did not arise until postpetition assessments were made by the Board of Managers. Therefore, according to Woodhaven, it is a postpetition debt for which the Debtors remain personally liable.

Condominium ownership in Illinois is expressly authorized and regulated by the Condominium Act. The Condominium Act does not define the term "condominium unit." Case law, however, defines a condominium unit as an "estate in real property consisting of an undivided interest in a portion of a parcel of real property together with a separate fee simple interest in another portion of the same parcel." *Giannini v. First Nat. Bank of Des Plaines,* 136 Ill.App.3d 971, 980, 91 Ill.Dec. 438, 483 N.E.2d 924 (1985) (quoting *Dutcher v. Owens,* 647 S.W.2d 948, 949 (Tex.S.Ct.1983)). The Condominium Act provides that it is the duty of every unit owner to pay his proportionate share of the common expenses of the association. *See,* Ill.Rev.

---

4. Section 524(a) provides, in pertinent part:
A discharge in a case under this title:
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under Sections 727, 944, 1142, 1228 or 1328, of this title, whether or not discharge of such debt is waived; (emphasis added)
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

5. The Debtors also argue that the covenant to pay assessments was rejected as an executory contract pursuant to § 365(d)(1). The Court, however, for reasons contained herein need not address that issue.

Stat., ch. 30 § 309(a). A unit owner's failure to pay the assessment gives rise to an automatic lien upon the unit, in favor of the condominium association, for the unpaid assessment plus costs. See, Ill.Rev.Stat., ch. 30 § 309(g)(1). The association may bring a forcible entry and detainer action for possession against a unit owner who has failed to pay the assessment. See, Ill.Rev. Stat., ch. 30 § 309(g)(2). Moreover, after a notice of lien is recorded, the association may bring a foreclosure action and the unit may be foreclosed in the same manner as a mortgage.[6] Ill.Rev.Stat., ch. 30 § 309(h). Woodhaven's Declaration mirrors the provisions of the Condominium Act.

The issue before the Court is whether the obligation to pay postpetition condominium assessments arising from a prepetition condominium agreement, constitutes a contingent debt discharged in the Chapter 7 proceeding. Courts addressing this issue have reached contrary conclusions.

One line of authority, represented by *Berens v. Woodhaven Ass'n,* 87 B.R. 971 (N.D.Ill.1988) aff'd 1989 WL 47409, U.S. Dist.Lexis 2298 (N.D.Ill.Dec. Mar. 7, 1989) holds that condominium assessments that accrue postpetition but arise out of a prepetition contract are prepetition debts, discharged in the Chapter 7 proceeding. Accord *In re Elias,* 98 B.R. 332 (N.D. Ill.1989). The primary rationale underlying this view is that while the postpetition assessment could not have been levied at the time the Chapter 7 case was filed, the debtor's obligation to pay postpetition assessments was a contingent prepetition debt which was extinguished upon the Chapter 7 discharge. The courts find that this view furthers the Code's "fresh start" policy.

The contrary position, as articulated by *In re Horton,* 87 B.R. 650 (Colo.1987) states that because the condominium association does not have a claim until the assessment is levied, an assessment levied

postpetition constitutes a postpetition debt for which the debtors remain personally liable. Accord *In re Rosteck,* 95 B.R. 558 (N.D.Ill.1988); *Rink v. Timber Ass'n, Inc.,* 87 B.R. 653 (Colo.1987); *see also In re Strelsky,* 46 B.R. 178 (E.D.Va.1985). Courts adopting this view conclude that the debtor continues to remain personally liable for the assessment until he/she is divested of title.

This Court, after considering the aforementioned authorities, respectfully declines to follow *Horton* and its siblings. The Court is of the opinion that *Behrens* and *Elias* represent the better reasoned approach.

■ A "debt" is defined as "liability on a claim." 11 U.S.C. § 101(11). A "claim", in turn, is broadly defined as any right to payment .. 11 U.S.C. § 101(4). As the *Elias* court observed, "the definitions are simply ways of describing the same thing." A "claim" from the creditor's perspective is a 'debt' from the debtor's." *In re Elias, supra* at 334. The legislative history of § 101(4) demonstrates that Congress intended the broadest possible definition for the term "claim" so that all of the debtor's legal obligations, no matter how remote or contingent, can be dealt with in the bankruptcy case. *In re Johns–Manville Corp.,* 57 B.R. 680, 687 (S.D.N.Y.1986).[7] As noted in *In re Black,* 70 B.R. 645, 649 (Utah 1986):

> The expanded concept of "claim" under the Bankruptcy Code was designed to accord to the debtor the "broadest possible relief in the bankruptcy court." That relief includes the ability to discharge a broader spectrum of the debtor's outstanding obligations. A more realistic "fresh start" is likewise effectuated by the broader definition.

*Horton's* interpretation of "claim", however, is inconsistent with the legislative history of § 101(4). As the *Elias* court observed:

---

**6.** Any encumbrancer holding a lien on a unit owner's interest may pay the unit owner's unpaid common expenses that have become due and for which a lien has been filed, and hold the lien for unpaid expenses at the same rate as

its encumbrance lien. Ill.Rev.Stat., ch. 30 § 309(j).

**7.** *See, In re Robinson,* 776 F.2d 30 (2d Cir.1985) (collecting cases defining "claim")

*Horton* was able to reach the conclusion that the postpetition assessments did not constitute a debt only by severely restricting the definition of a "claim." And this interpretation is at loggerheads with the statute's wording. After all, the definition of a "claim" includes contingent rights to payment. And *Horton* has effectively read this language out of the statute.

*In re Elias,* 98 B.R. 332 (N.D.Ill.1989).

In the case at bar, it is undisputed that the Debtors' obligation to pay the postpetition assessments arose from the prepetition condominium agreement. It is well settled that where an obligation to pay a debt arises prepetition, but the debt becomes due postpetition, that debt is prepetition for purposes of the Bankruptcy Code. *In re A.H. Robbins Company, Inc.,* 63 B.R. 986 (E.D.Va.1986) *aff'd* 839 F.2d 198 (4th Cir. 1988). Nevertheless, Woodhaven argues that since its right to payment did not arise until a postpetition assessment was made, that debt is postpetition. In order to reach this desired conclusion, however, Woodhaven conveniently ignores or glosses over the meaning of a contingent claim. Contingent is defined as "possible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which itself is uncertain or questionable." Black's Law Dictionary 290 (5th ed. 1979); *see also, In re Elias, supra,* at p. 334. Woodhaven's right to payment for postpetition assessments was contingent upon the happening of an uncertain future event, that event being that the Debtors would retain postpetition title to the property. Absent divestiture, the only unknown fact was the amount of Debtors' share of future expenses.

Accordingly, this Court, like *Behrens* and *Elias,* holds that postpetition assessment, arising from the prepetition condominium agreement, was a prepetition debt that was extinguished upon the Debtors' Chapter 7 discharge. Any other conclusion would ignore the Congressional mandate that courts liberally construe "claim", in order to accord to the debtor the broadest possible relief. There is, however, a more fundamental basis for the Court's decision.

Obligations arising out of prepetition contracts, but due postpetition, are prepetition debts. *Household Finance Corp. v. Hansberry,* 20 B.R. 870 (Ohio 1981). And it is recognized that a Chapter 7 discharge extinguishes the debtor's personal liability for the debt. *See, In re Lindsey,* 823 F.2d 189 (7th Cir.1987). But, according to *Horton,* this is not the case where a condominium agreement is involved. *Horton, et al.* hold that after discharge, the debtors remain personally liable for postpetition assessments for as long as they retain title to the property. The basis for this conclusion is, however, unclear. A condominium agreement is a contract.[8] A debtor's obligation to pay assessments arises from that contract. The concept of title lends no support for *Horton's* conclusion. This flaw in *Horton's* reasoning is best demonstrated by analogy. Suppose a party has executed a note secured by a mortgage on his home. Because Illinois is a "lien theory" state, a mortgagee only has a lien on that property, while the mortgagor retains title. *Kling v. Ghilarducci,* 3 Ill.2d 454, 121 N.E.2d 752 (Ill.Sup.Ct.1954). In fact, title and the right to possession are retained by the mortgagor through a foreclosure process and only terminated upon expiration of the redemption period following foreclosure sale. *In re Schnupp,* 64 B.R. 763, 766 (N.D.Ill.1986). If the mortgagor files a Chapter 7 petition and receives a discharge, it is clear that it is no longer personally liable on the note. The mortgagee can only look for in rem satisfaction of the debt. It is well settled that valid liens that have not been disallowed or avoided survive the discharge of the underlying debt. *Matter of Tarnow,* 749 F.2d 464 (7th Cir.1985). The fact that the debtor retains title until the mortgagee forecloses does not expose the

---

**8.** *See, Streams Sports Club, Ltd. v. Richmond,* 99 Ill.2d 182, 75 Ill.Dec. 667, 457 N.E.2d 1226 (Ill. Sup.Ct.1983) (condominium declaration is a contract); *see also, In re Case,* 91 B.R. 102 (Colo.1988) (debtors cannot partially reject condominium declaration as an executory contract and retain ownership of their unit); *Chmil v. Mediterranean Manors Ass'n., Inc.,* 516 So.2d 1109 (Fla.App. 2 Dist.1987).

debtor to liability for the mortgage payments. Thus, even if the mortgagee sat on its rights and did not foreclose on its lien, it could not hold the debtor liable for postpetition mortgage payments.

Yet, *Horton* concludes that a condominium owner-debtor continues to be liable for postpetition assessments after a discharge. The rationale that a condominium owner-debtor has retained postpetition title to the property begs the question. In this case, the Debtors have retained title because Woodhaven chose not to foreclose on its lien. It not only has a postpetition lien on the Debtors' property for unpaid assessments, but it also seeks to hold the Debtors personally liable for said debt. The Code, however, does not support such a result. Woodhaven's only remedy for postpetition assessments is to foreclose on its lien, thereby divesting the Debtors of title and halting the accrual of such debt. Otherwise, unless and until the Debtors were able to dispossess themselves of title, they would remain liable for these assessments. According to *Horton*, a debtor remains liable for postpetition assessments, even where the debtor offers to surrender the property to the association, but the association refuses. *Horton's* rationale allows, indeed encourages, condominium associations not to foreclose on their lien but instead allow postpetition assessments to accrue.[9] This goes against the very essence of the Code's "fresh start" policy.

Yet this Court is not unmindful of the concerns expressed in *Horton* and the other cases that have rejected the argument that the debtor is relieved of the obligation to pay postpetition condominium assessments. Under the condominium law of most states, the debtor remains as owner of the condominium unit with the right to possess the unit until such time as the association terminates the right to posses-

sion and/or ownership through judicial proceedings. Thus, some courts have concluded that the debtor cannot reject the obligation to pay postpetition assessments while retaining the benefits of possession and ownership. *See, Case*, supra, n. 8 at 104. I agree. If the debtor retains possession of the unit and/or asserts an ownership interest in the property, the condominium declaration has not been rejected. If, on the other hand, the debtor surrenders possession and tenders the ownership interest to the association before or upon filing a petition under Title 11, the executory declaration is rejected and the obligation to pay postpetition assessments may be discharged. This is a fair accommodation of the rights and needs of the association while accomplishing the broad goals of the Bankruptcy Code.

The effect of today's decision is that a condominium owner-debtor may be discharged of a postpetition assessment debt. However, for the postpetition assessments to be discharged, the debtor must schedule that contingent, unmatured debt and within a reasonable time before or after filing the petition, relinquish possession and other incidents of ownership of the unit in clear and unequivocal terms.[10] *See, In re Montoya*, 95 B.R. 511 (S.D.Ohio 1988) (debtor not liable for postpetition assessment debt where debtor abandons the condominium before or upon bankruptcy filing). The debtor must then vacate the property. If, after offering to surrender ownership, the debtor remains in actual or constructive possession of the unit, then the debtor may be liable to the association for use and occupancy, including postpetition assessments. The filing of the bankruptcy petition is not sufficient. This analysis is consistent with *In re Harvey*, 88 B.R. 860 (N.D.Ill.1988) which held that a Chapter 13

---

**9.** In essence, under *Horton,* a condominium association holds the debtor hostage because it may elect not to foreclose on its lien and divest the debtor of title on the one hand, and, on the other, the debtor cannot abandon fee simple title and walk away from postpetition assessment obligations. *See,* Simonton, Abandonment of Interests in Land, 25 Ill.L.Rev. 261

(1930); Thompson on Real Property § 2515 (1978).

**10.** The association has the right, upon default in payment of assessments, to take possession of the interest held by the unit owner. *See,* Ill. Rev.Stat., ch. 30 § 309.2. It is not necessary to decide at this point how the debtor surrenders ownership rights to the association.

condominium owner-debtor remained liable for postpetition assessments, where the debtor retained postpetition possession of the unit. This framework is similar to that employed where a trustee rejects a lease pursuant to Section 365, but the debtor remains in possession of the unit. It is clear in that situation that the debtor is liable for use and occupancy. *See, Matter of Ament,* 77 B.R. 439 (Del.1987).

The Court, having found that the Debtors' postpetition assessment debt may be discharged, next addresses whether Woodhaven was in contempt of the discharge order. There is a split of authority on the issue whether a bankruptcy court possesses civil contempt power. *Cf. In re Sequoia Auto Brokers, Ltd.,*[11] 827 F.2d 1281 (9th Cir.1987) (only Act III judges possess civil contempt power) with *In re Miller,* 81 B.R. 669 (M.D.Fla.1988).[12] (Non–Act III courts possess inherent and statutory civil contempt power.) This Court is of the opinion that "there must be some mechanism to vindicate the rights of a discharged debtor in the event the debtor's rights are violated by a creditor who disobeyed and flaunted the permanent injunction imposed by the discharge granted to the debtor." *Id.* at 672. Enforcement of the discharge injunction of Section 524 must be within the core jurisdiction of this Court. In order to sustain a motion for civil contempt, the Court must find that the offending party must have knowingly violated a definite and specific court order. *In re Sandmar Corp.,* 12 B.R. 910 (N.M. 1981). The burden of proof is on the petitioner to show the violation by clear and convincing evidence. *Louisiana Ed. Ass'n v. Richland Parish School Bd.,* 421 F.Supp. 973 (1976). Thus, before this Court can find a violation of the discharge order, the Debtors must establish by clear and convincing evidence that Woodhaven had knowledge or notice of the Debtors' discharge.

On the record before the Court, it is not clear whether at the time this case was filed, the Debtors had informed the Association of their intention to give up possession of the condominium unit or whether and when the Debtors offered to surrender their ownership rights. Therefore, it is not clear that Woodhaven was not entitled to compensation from the Debtors for the amounts obtained in the postpetition judgment awarded by the state court. On this record the Court must deny the motion to hold Woodhaven in contempt of Court.

### Conclusion

IT IS HEREBY ORDERED that the Debtors' motion to find Woodhaven in contempt is denied.

---

11. *Accord, In re Continental Air Lines, Inc.,* 61 B.R. 758 (S.D.Tex.1986); *In re Industrial Tool Distributors, Inc.,* 55 B.R. 746 (N.D.Ga.1985); *In re Omega Equipment Corp.,* 51 B.R. 569 (D.D.C. 1985).

12. *Accord, In re Hamilton Allied Corp.,* 87 B.R. 43 (S.D.Ohio 1988); *Kellogg v. Chester,* 71 B.R. 36 (N.D.Tex.1987); *In re Haddad,* 68 B.R. 944 (Mass.1987); *In re Edgehill Nursing Home, Inc.,* 68 B.R. 413 (E.D.Pa.1986).