**In the Matter of Kimberly PRATOLA, Debtor.**

**Bankruptcy No. 91–21476.**

United States Bankruptcy Court, D. New Jersey.

Jan. 12, 1993.

---

Anthony J. Lagasi, Fairfield, NJ, for Kimberly Pratola.

William E. Schetlick, Alan Jeffrey Miller, Chtd., Bridgewater, NJ, for Fox Hill at Rockaway Condominium Association, Inc.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

The debtor, Kimberly Pratola, brought this order to show cause seeking to have one of her creditors, Fox Hill at Rockaway Condominium Association, found in contempt of court for willfully violating the effect of the bankruptcy discharge pursuant to 11 U.S.C. § 524. The issues raised by this contested matter are core proceedings as defined by Congress in 28 U.S.C. § 157 *et seq.* The within opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. The debtor, Kimberly Pratola ("debtor") filed a petition for relief under chapter 7 of the United States Bankruptcy Code on March 7, 1991. At the time of the filing of her petition, the debtor was approximately 25 years old.

2. As evidenced by the debtor's bankruptcy petition, at the time of the filing, the debtor was employed for four (4) years as a supervisor at a law firm in New Jersey.

3. The debtor's 1989 gross income was listed as $17,000.00; her 1990 gross income was listed as $20,000.00.

4. On February 2, 1989, at the age 23, the debtor purchased condominium unit A1 at Fox Hill in Rockaway, New Jersey for $109,000.00 and executed a purchase money mortgage on the same date with The Dime Savings Bank ("The Dime") in the amount of $84,000.00.

5. Two and a half months later, on April 29, 1989, the debtor purchased a second condominium known as unit 2A on Ocean Avenue in Belmar, New Jersey. The purchase price was $100,000.00 and the debtor gave a first mortgage in the amount of $75,000.00 to The Prudential Mortgage Company on the date of the sale.

6. The debtor's unrebutted sworn statement filed September 8, 1992 stated that she had entered into an agreement with the sellers/realtors in connection with these purchases whereby she would purchase the above mentioned units with no money down. According to the debtor, the sellers/realtors were her partners in the condominium even though they did not invest any of their own money. The debtor was told that the partners would rent the unit and the rental would pay the mortgage.

7. The debtor never lived in either unit and resides at a different address.

8. According to the debtor, the expected rentals from the condominium never materialized and the mortgage became delinquent shortly after closing.

9. Unable to meet the mortgage payments and unable to sell the condominium because the mortgage exceeded its value, the debtor contacted an attorney in December, 1990. The debtor's attorney contacted The Dime and offered a deed in lieu of foreclosure for the Fox Hill condominium, which The Dime refused. The debtor was thus, forced to retain ownership against her will.

10. The above events precipitated the debtor filing bankruptcy in March, 1991.[1]

11. The debtor's bankruptcy petition listed the Fox Hill condominium property; her mortgage obligation to The Dime; and her condominium assessment obligation to Fox Hill Condominium Association ("Fox Hill").

12. The debtor subsequently received her discharge on August 12, 1991.

13. On October 8, 1991, the chapter 7 trustee abandoned the Fox Hill condominium thereby vesting title back in the debtor.

14. On October 31, 1991 Fox Hill brought suit in New Jersey Superior Court against the debtor for her post-petition unpaid monthly condominium assessments from April, 1991 forward.

15. The debtor did not respond to the Complaint and default judgment was entered against her in the amount of $2,687.60 on February 24, 1992. With judgment in hand, Fox Hill levied upon the debtor's bank account.

16. The bank levy and impending turnover led the debtor to file the current order to show cause seeking an order holding Fox Hill in contempt of court for violating the debtor's discharge.

17. A hearing on the within matter was held on October 13, 1992 and decision was reserved thereon.

## DISCUSSION

■ The sole issue before the court is whether debtor's discharge relieved her of the personal obligation to pay post-petition condominium common expense assessments. The issue presents a conflict between federal bankruptcy law, the underlying purpose for which is to provide the debtor with a "fresh start" from the burdens of oppressive debts, and state condominium ownership laws, which provide for the enforceability of common expense assessments against individual property owners in a condominium development. While recognizing this apparent conflict, this court nevertheless holds that the bankruptcy discharge did relieve debtor of her per-

---

1. It is perhaps appropriate at this time to comment on the court's concern over the facts leading up to this particular debtor acquiring both condominium units which ultimately led to the debtor's troubled financial situation. As the debtor's bankruptcy petition and other facts show, within the span of several months and at the age of 23, the debtor purchased two condominiums at a combined market value of over two hundred thousand dollars ($200,000.00) with no money down, and all at a time when the debtor's gross annual income was approximately $20,000.00. While the debtor's ability to pay for these real estate properties was questionable, the court notes that no objections to discharge were filed by creditors and the debtor did, in fact, receive her discharge.

sonal liability for post-petition common expense assessment.

Section 727 of the bankruptcy code governs the dischargeability of debts in a bankruptcy proceeding.[2] A "debt" is defined as a "liability on a claim." 11 U.S.C. § 101(11). A "claim" is broadly defined as a "right to payment …" 11 U.S.C. § 101(4). Legislative history underlying the passage of § 101(4) demonstrates that Congress intended the broadest possible definition for the term "claim" so that all of the debtor's legal obligations, no matter how remote or contingent, could be dealt with in the bankruptcy proceeding. *See In re Ryan*, 100 B.R. 411, 414 (Bankr.N.D.Ill. 1989). Under such a broad definition, the debtor clearly had a debt for future condominium common expense assessments when she filed her bankruptcy petition. *See In re Wasp*, 137 B.R. 71, 72 (Bankr. M.D.Fla.1992).

It is apparent that different courts addressing the situation at bar have reached contrary conclusions. Some courts have held post-petition condominium common assessments to be just that, post-petition debts that are not discharged by the bankruptcy. *See e.g. Horton v. Beaumont Place Homeowners Ass'n, Inc. (In re Horton)*, 87 B.R. 650 (Bankr.D.Colo.1987). Other courts, however, have held that condominium assessments that accrue post-petition but arise from a pre-petition contract are pre-petition debts, thus discharged in the chapter 7 proceeding. *See e.g. Behrens v. Woodhaven Ass'n*, 87 B.R. 971 (Bankr. N.D.Ill.1988), aff'd, 1989 WL 47409, U.S.Dist.Lexis 2298 (N.D.Ill.1989).

 In *Ryan, supra*, the court clearly recognized the difficult conflict posed by either not giving a bankrupt debtor its entitled "fresh start" pursuant to the Code, or giving the condominium owner-debtor an apparent "free-ride" from assessed common expenses at the expense of fellow condominium owners in the same association. In assessing these two difficult alternatives, the court in *Ryan* struck a fair compromise:

> If the debtor retains possession of the unit and/or asserts an ownership interest in the property, the condominium declaration has not been rejected. If, on the other hand, the debtor surrenders possession and tenders the ownership interest to the association before or upon filing a petition under Title 11, the executory declaration is rejected and the obligation to pay postpetition assessments may be discharged. This is a fair accommodation of the rights and needs of the association while accomplishing the broad goals of the Bankruptcy Code.

*In re Ryan*, 100 B.R. at 416. This court finds the reasoning of the court in *Ryan* both sound and fair, and hereby adopts that approach with respect to the issue at bar.

It is now inherent upon the court to determine when the debtor unequivocally surrendered ownership of the unit. The facts clearly indicate that the debtor attempted to deed the unit back to The Dime via a deed in lieu of foreclosure before she even filed for bankruptcy, and then a second time upon commencement of the foreclosure proceedings. The debtor has never lived in the unit and attested that she has tried every conceivable method to divest herself of title to the property.[3] Accordingly, this court is satisfied that the debtor adequately indicated her unequivocal surrender of the unit before, during, and after the bankruptcy and is, therefore, not liable for any of the post-petition common ex-

---

**2.** Section 727(b) states in pertinent part:
 (b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

**3.** The court notes that even at the hearing on this matter on October 13, 1992, the debtor offered to tender a deed to Fox Hill in satisfaction of its claims. Attorneys for Fox Hill indicated that they were not at that time in the position to accept such an offer.

pense assessments. The fact that both the mortgagee-bank and the condominium association both refused to accept tender of a deed from the debtor should not operate against the debtor's entitlement to a "fresh start" which the Bankruptcy Code was meant to provide.

■ With respect to the debtor's request to find Fox Hill in contempt of court for violating the debtor's discharge, this court declines to do so. Although the court has held that the debtor's personal liability for post-petition common assessments was discharged by virtue of the debtor's bankruptcy, the court nevertheless recognizes that the law on this issue is unclear in New Jersey. The attorneys for Fox Hill have argued in good faith for their position citing valid authority from other jurisdictions that support their argument. Accordingly, an order holding Fox Hill in contempt of court is not appropriate at this time—assuming, of course, that any actions to pursue post-petition common assessments from the debtor cease immediately. Any recourse for unpaid common assessments shall be limited to a lien on the condominium unit, which would have survived the bankruptcy.

### CONCLUSION

The debtor's order to show cause seeking an order finding her creditor, Fox Hill Association, in contempt of court is hereby denied.

The debtor is not personally liable for any post-petition common expense assessments that have accrued against the condominium unit of which she is record owner. Fox Hill's sole remedy is limited to a lien against the particular unit.