**In the MATTER OF Margaret G. GARCIA, Debtor.**

**Bankruptcy No. 90–06032–G.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Oct. 8, 1993.

Dennis J. Kuirsky, Royal Oak, MI, for debtor.

D. Douglas Alexander and Brian Rogoff, Plymouth, MI, for Oakbrook Condominium Ass'n.

Steve Sowell, Plymouth, MI.

## MEMORANDUM OPINION DISCHARGING POST–PETITION CONDOMINIUM ASSOCIATION FEES

RAY REYNOLDS GRAVES, Chief Judge.

### INTRODUCTION

This Court is presented with a question of first impression for the United States Bankruptcy Court for the Eastern District of Michigan. The Court is asked to determine whether condominium association fees that arise post-petition are deemed to be discharged pursuant to the Order of Relief.

### BACKGROUND

On July 16, 1990, Debtor Margaret G. Garcia filed a Voluntary Petition for Relief pursuant to chapter 7 of the United States Bankruptcy Code. A discharge was granted on October 29, 1990. Subsequent to the discharge, a cause of action was filed in Oakland County by Oakbrook Condominium Association, a Michigan nonprofit corporation. The lawsuit was remanded to the 52nd/53rd District Court, in Rochester, Michigan for final adjudication.

The parties disagreed about the debt status. The Debtor maintains that the Association was a listed creditor and that at the time, the debt was contingent and specifically unascertainable and it was only determinable after the Debtor's right of statutory redemption expired.

Oakbrook asserts that it was aware of Debtor's bankruptcy and that it only sought a judgment for post-petition assessments that did not exist prior to the filing of the Debtor's bankruptcy case.

As a result of their dispute, the Debtor brought a motion for this Court to reopen this case and to determine the dischargeability of the debt.

### FACTS

Creditor, Oakbrook is the nonprofit corporation organized to administer the affairs of Oakbrook Condominium, a project located in Avon Township, Oakland County, Michigan. Debtor Garcia purchased a unit in the project on June 17, 1988.

The condominium project was established and is governed by a master deed, site plan and condominium by law, all of which were recorded with the Oakland County Register of Deeds [1] in the chain of title to the Defendant's condominium unit.

Among other responsibilities, the condominium bylaws provide in Article II for assessment to each co-owner of his proportionate share of the condominium expenses of the project including association fees [2]. Upon

---

1. Liber 9263 pages 177 et seq.

2. ARTICLE II—ASSESSMENTS

    Section 1. The Association shall be assessed as the entity in possession of all tangible personal property of the Condominium as possessed in common by the Co-owners. All such personal property taxes shall be treated as an expense of administration.
    Section 2. All costs incurred by the Association in satisfaction of any liability arising within, caused by or in connection with the common elements or the administration of the Condominium shall be expenses of administration within the meaning of Section 15 of Public Act 229 of 1963, as amended; and all sums received as proceeds of, or pursuant to, any policy of insurance carried by the Association securing the interests of the Co-owners against liabilities or losses arising within, caused by or connected with the common elements or the administration, shall be receipts of administration.

failing to timely pay her association fees, which were assessed monthly, Oakbrook served the Debtor with a lien on July 16, 1990, later, on that same day, the Debtor filed for bankruptcy protection.

Prior to Oakbrook obtaining a money judgment and foreclosing its lien, the first mortgagor of the unit proceeded to foreclose its mortgage and conducted a sheriff's auction of the unit on April 26, 1991. Although the redemption period expired six months later on October 26, 1991, the Debtor vacated the premises five months earlier on May 1, 1991. Pursuant to the Michigan Condominium Act, the first mortgagor's foreclosure extinguished Oakbrook's lien and it was therefore only left with a money judgment claim.

The case was mediated and remanded to the Rochester District Court, where it awaits a trial date. Oakbrook seeks assessments from August 1, 1990 through October 1, 1991 [3], claiming that the fees are post-petition and therefore not subject to the Debtor's discharge. In contrast, the Debtor claims that this debt was discharged in her bankruptcy proceeding or alternatively is a dischargeable debt. The discharge of condominium fees accruing post-petition is a question of first impression.

### LEGAL ANALYSIS

■ Ordinarily, once the court enters a discharge pursuant to 11 U.S.C. § 727, a

Debtor is discharged from all debts which arose before the Order for Relief and any liability on a claim determined under 11 U.S.C. § 502 as if such claim arose before the commencement of the case. Exceptions to this provision are found in 11 U.S.C. § 523. In this case, the debt owed to Oakbrook is not an exception to discharge as provided in 11 U.S.C. § 523. Therefore, the first generation question becomes, whether the debt owed to the Association arose pre- or post-petition and; second, whether the debt is subject to discharge pursuant to 11 U.S.C. § 727?

### I

The issue of whether condominium association fees are dischargeable in a chapter 7 proceeding and, if so when, has been addressed by several courts with mixed results. Conclusions have been reached with wide and divergent analysis. In most cases, some statement of affirmative intention by the Debtor to leave the unit is required. Other courts have strained interpretations of the condominium documents as a contract entered into pre-petition and thus, discharging the debt.

There are several ways of arriving at a decision regarding the dischargeability of condominium fees. In the past, courts have

Section 3. All assessments levied against the Co-owners to cover expenses of administration shall be apportioned among and paid by the Co-owners in accordance with the percentage of value allocated to each apartment in the Master Deed, without increase or decrease for the existence of any rights to the use of limited common elements appurtenant to an apartment. Assessments shall be due and payable at such times as the Association shall determine, commencing with the acceptance of a deed to an apartment from the date of assessment and such lien shall be prior to all other liens except liens for taxes by any Federal, state, county or local government, and all sums unpaid on a first mortgage of record. The payment of an assessment shall be in default if such assessment, or any part thereof, is not paid to the Association in full on or before the due date for such payment. Assessments in default shall bear interest at the rate of seven (7%) percent per annum until paid in full.

Section 4. No Co-owner may exempt himself from liability for his contribution toward the expenses of administration by waiver of the use or enjoyment of any of the common elements or

by the abandonment of his apartment/s, or by the sale or transfer of his apartment/s to a third party until said third party is accepted and qualified as a member.

Section 5. The Association may enforce collection of delinquent assessments by suit at law for a money judgment or by foreclosure of the lien securing payment. In an action for foreclosure, a receiver may be appointed to collect a reasonable rental for the apartment from the Co-owner thereof. The expenses incurred in collecting unpaid assessments including interest, costs and attorneys' fees, shall be chargeable to the Co-owner in default. The Association may also discontinue the furnishing of any services to a Co-owner upon notification of its intent to do so. A Co-owner in default shall not be entitled to vote at any meeting of the Association so long as such default continues.

3. The alleged debt represents the assessment amount after the Order for Relief through the last assessment prior to the expiration of the bank's redemption period.

entertained the notion of paying condominium fees that accrue post-petition as being tantamount to an executory contract, thereby falling under the auspices of 11 U.S.C. § 365. Thus, any initial inquiry of whether the Debtor is liable for post-petition condominium association fees must begin with an analysis of whether the requirement to pay such fees constitutes an executory contract.

## II

### EXECUTORY CONTRACT

Although an executory contract is not defined by the Bankruptcy Code, it has been determined as "nothing more than mixed assets and liabilities arising out of the same transaction." *See In re Raymond*, 129 B.R. 354 (S.D.N.Y.1991).

More appropriately the legislative history denotes an intent by the drafters to define it by the principles of mutuality by referencing executory contracts as contracts where performance remains due to some extent on both sides. In addressing the issue of whether a note is an executory contract, the Senate Judiciary Committee commented that:

> A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory.
>
> Report of Senate Comm. on the Judiciary S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News pp. 5787, 5844.

The Sixth Circuit has adopted the widely accepted definition of an executory contract as articulated by Professor Countryman[4], who defines an executory contract as follows:

> "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."
>
> Countryman, Executory Contracts in Bankruptcy, 57 Minn.L.Rev. 439 (1973).

A cursory review of the executory contract analysis appears to be a correct framework in which to analyze the case at bar. Yet, a more thorough review reveals that an executory contract theory is inappropriate. This Court deems the executory contract analysis to be incorrect for a myriad of reasons. First, assuming that an executory contract exists between the parties, rejection of such would not constitute a breach relieving the Debtor of her obligation to perform.

The failure to pay condominium fees as being the rejection of an executory contract has also been analyzed and rejected in *In re Raymond*. The Court in *In re Raymond* compares the payment of condominium association fees with the rejection of a lease under 11 U.S.C. § 365(d)(1). That provision requires the acceptance or rejection of an executory contract and states specifically that:

> In a case under Chapter 7 of this title, if the Trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.
>
> 11 U.S.C. § 365(d)(1).

The *Raymond* Court concludes that even if an agreement to pay condominium charges was an executory contract not assumed by the Chapter 7 Trustee and therefore, deemed rejected, the rejection is irrelevant to the Debtor's liability to pay. *Id.* at 358. *See also In re Behrens*, 87 B.R. 971 (N.D.Ill. 1988), *aff'd.*

Further, a determination that an agreement to provide services and the Debtor to pay condominium association fees as an executory contract was categorically rejected in *In re Case*, 91 B.R. 102 (D.Colo.1988). In *In re Case*, the chapter 13 debtors, as owners of a condominium unit, sought to reject the condominium association fees as an executory contract in order to extinguish their obligation to pay post-petition assessments. The Court held:

4. *See In re Terrell*, 892 F.2d 469, 471 n. 2 (6th Cir.1989).

that condominium declaration creates and defines the Debtor's interests in the real property owned by them. The declaration creates mutual obligations, but also creates mutual ownership interests among these debtors and all others owning condominium units. The ownership interests of the Debtors are, ... "inseparable". *Id.* at 104.

The Court in *In re Case* surmised that if the condominium charges agreement is an executory contract, its rejection by the Trustee would not constitute a breach relieving the Debtor of his obligations to perform. Therefore, the *Case* Court recognized that the severing of condominium fees is tantamount to a covenant that runs with the land and as such is not an executory contract.

■ Most courts now recognize that assessment fees for condominiums do not equal an executory contract. Generally the concept is mentioned and then rejected [5]. Accordingly, this Court rejects the concept that condominium fees in this case represent an executory contract. Having rejected the executory contract analysis this Court must next consider whether condominium fees are dischargeable pursuant to 11 U.S.C. § 727.

### III

### DISCHARGE OF DEBTS PURSUANT TO 11 U.S.C. § 727

11 U.S.C. § 727(b) confers broad discharge powers. 11 U.S.C. § 727 provides that:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

The Code defines "debt" as liability on a claim. *See* 11 U.S.C. § 101(12). A "claim" in turn is defined as:

> (A) Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured,
>
> or
>
> (B) Right to an equitable remedy for breach of performance if such breach gives rise to a right to payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Apparently, the drafters of the Code intended to confer a broad definition of claim as discussed in *First Federal of Michigan v. Barrow,* 878 F.2d 912 (6th Cir.1989). Accordingly, the legislative history demonstrates that Congress intended the broadest possible definition for the term claim so that "all of the Debtor's legal obligations, no matter how remote or contingent, can be dealt with in the bankruptcy case." *In re Ryan,* 100 B.R. 411 (N.D.Ill.1989). *See also In re Johns–Manville Corp.,* 57 B.R. 680 (S.D.N.Y. 1986).

### IV

### POST–PETITION ASSESSMENTS

■ A long line of cases has determined that post-petition assessments that arise pre-petition are dischargeable [6]. In *In re Montoya,* 95 B.R. 511 (S.D.Ohio 1981), the Court held that the Debtor's liability for post-petition assessments was discharged, notwithstanding the Debtor's continued occupancy of the unit and her right of redemption. This Court agrees.

In a factually similar case, the Court in *In re Cohen,* 122 B.R. 755 (S.D.Cal.1991) reasoned that while the Debtors were obligated to pay post-petition assessments it is well

---

5. *See In re Case,* 91 B.R. 102 (Bankr.D.Colo. 1988); *In re Raymond,* 129 B.R. 354 (S.D.N.Y. 1991).

6. *See In re Ryan* discussed *infra, Behrens v. Woodhaven Ass'n,* 87 B.R. 971 (N.D.Ill.1988); *In*

re Elias, 98 B.R. 332 (N.D.Ill.1989); *In re Montoya,* 95 B.R. 511 (S.D.Ohio 1988).

settled that where an obligation to pay a debt arises pre-petition, but the debt becomes due post-petition, that debt is pre-petition for purposes of the Bankruptcy Code. *See In re A.H. Robins Co., Inc.,* 63 B.R. 986 (E.D.Va. 1986) *aff'd,* 839 F.2d 198 (4th Cir.1988); *Household Finance Corp. v. Hansberry,* 20 B.R. 870 (Ohio 1982). Similarly, the Court in *In re Elias,* 98 B.R. 332, 336 (N.D.Ill.1989) held that "condominium assessments that accrue post petition but arise out of a pre-petition contract are dischargeable [debts] in a chapter 7 proceeding." The Court's rationale underlying this view is that while the post-petition assessment could not have been liquidated at the time the chapter 7 was filed, the Debtor's obligation to pay was a pre-petition debt that was extinguished upon the chapter 7 discharge.

## V

In contrast, some courts have been willing to find that post-petition assessments are post-petition debts not subject to discharge. *See In re Horton,* 87 B.R. 650 (D.Colo.1987); *In re Rink,* 87 B.R. 653 (D.Colo.1987); *In re Lenz,* 90 B.R. 458 (D.Colo.1988); *In re Raymond,* 129 B.R. 354 (S.D.N.Y.1991). This line of cases finds the Debtor liable for charges until the Debtors are divested of title to the property.

*Raymond* and its siblings in holding that the Debtor is liable for post-petition assessments, argue that the Debtor has a continuing liability under the condominium documents, which liability gives rise to a debt every time an assessment accrues. Those courts holding that post-petition condominium charges are not discharged under 11 U.S.C. § 727(b) generally conclude that since the obligation accrues post-petition they are unaffected by this provision. They contend that to hold otherwise would give the Debtor a head start rather than a fresh start. *See Raymond* at 359.

## VI

In Michigan the statutory authority for assessment of expenses for a condominium unit is found in M.C.L.A. § 559.169. This provision of the Michigan Condominium Act provides for assessment of condominium expenses to the co-owners in accordance with the terms of the Master Deed and condominium bylaws; it therefore gives the developer of a condominium project, wide discretion to provide, in the documents, when and how those expenses will be assessed to co-owners.

Oakbrook's condominium documents provide that assessments shall be due and payable at such time as the Association shall determine[7]. In this case, the Association has determined that assessments are due and payable on a monthly basis, on the first day of each month. A failure to pay the Condominium Association fees gives rise to an automatic lien upon the unit in favor of the Condominium Association.

Plaintiff argues that it is significant that the Association provides for monthly assessments. The Association could have provided that the assessments were annual assessments payable in monthly installments, or simply that the assessments were annual assessments payable on the first of each year, which is not an uncommon practice. Instead, it was determined that the fees would accrue on a monthly basis. This Court, however, finds such argument unremarkable, as the Defendant's liability to pay such fees arise pre-petition.

Plaintiff further argues that the line of cases supporting the dischargeability of condominium fees are flawed and are difficult to implement. In support of this contention, Plaintiff refers to certain perceived difficulties found in cases discharging condominium fees. Plaintiff explains that an affirmative signal by the Debtor to surrender the premises and a determination that the Debtor's continued occupancy would be temporary is unascertainable.[8]

The line of cases that supports dischargeability of condominium fees must initially determine if the debtor will remain in the unit on a temporary basis. In the case

---

7. Article II, Section 3 of the Condominium Bylaws empowers the association to determine the time that assessments are payable.

8. *See, e.g., In re Montoya; In re Ryan* discussed *supra.*

*sub judice* plaintiff contends that it would be impossible to determine what temporary means. However, in *Montoya*, the Court discharged the condominium fees subject to the Debtor's right of redemption. Therefore, it is clear that the Debtor was subject to post-petition fees only if the Debtor remained in the unit beyond her statutory right to redeem. Similarly in *Ryan*, where the court discharged pre-petition debts, the *Ryan* Court, cautioned that the Debtor may be liable for assessments post-petition if the Debtor continued in possession of the unit post-petition after offering to surrender ownership. However, that is not the situation in the case at bar. In this case the Debtor vacated the unit some five months prior to her statutory right to redeem, and such post-petition charges should not be assessed.

■ Plaintiff argues that under the *Ryan* test that the court must "on a case-by-case basis, inquire as to the Debtor's intent to remain in the condominium, the length of a reasonable period of time to remain in possession, and whether a surrender has occurred." [9] Yet such a cumbersome analysis is inaccurate. The fees are subject to discharge as a pre-petition debt. Any post-petition assessment accrues subject to the Debtor's statutory right to redeem. Upon exercising such right, accrual of post-petition assessments may begin.

## VII

### ABANDONMENT

■ Alternatively, Plaintiff argues that post-petition fees accrue upon "abandonment" or a determination of a no asset case by the Trustee. Plaintiff directs this Court to the minority view as adopted in *In re Raymond, infra* which holds that the estate is liable for the post-petition assets until such time as the Trustee files either a "no asset report" or abandons the condominium unit.

Plaintiff concludes that the cases holding the Debtor liable for post-petition assessment, find that the Debtor has a continuing liability under the condominium documents, which liability gives rise to a debt every time

**9.** Plaintiff's brief A, page 5.

an assessment accrues. Moreover, Plaintiff claims that pre-petition assessments are discharged, and post-petition assessments are not. *In re Raymond,* 129 B.R. 354 (S.D.N.Y. 1991); *In re Horton,* 87 B.R. 650 (D.Colo. 1987). However, Plaintiff's notion would deny the Debtor her right to a fresh start. It does not give rise to a "head start" as some courts contend.

### CONCLUSION

The dischargeability of condominium association fees allows the Debtor to start anew as contemplated by the Code by allowing the Debtor a fresh start.

Accordingly, this Court finds that the condominium fees are pre-petition obligations and are therefore discharged.

**IT IS SO ORDERED.**