### In re Danny RIVERA, Debtor.

### No. 98–06110–6B7.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Dec. 14, 2000.

---

Margaret W. Hudson, Altamonte Springs, FL, for debtor.

David G. Shields, Clayton & McCulloh, Maitland, FL, for Shelby Place Property Owners, Association, Inc.

Kenneth D. Herron, Jr., Orlando, FL, Chapter 7 Trustee.

**_ORDER ON CREDITOR, SHELBY PLACE PROPERTY OWNERS ASSOCIATION, INC.'S MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO COMPEL DEBTOR TO REAFFIRM, TO REDEEM, OR TO SURRENDER, AND TO WITHHOLD ENTRY OF THE DISCHARGE PENDING CONSIDERATION OF THIS MOTION OR, ALTERNATIVELY, TO DISMISS_**

ARTHUR B. BRISKMAN, Bankruptcy Judge.

## MEMORANDUM OPINION

This case came on the Motion of Shelby Place Property Owners Association, Inc. ("Association") for Reconsideration of Order denying Motion to Compel Debtor to Reaffirm, to Redeem, or to Surrender, and to Withhold Entry of the Discharge Pending Consideration of This Motion or Alternatively to Dismiss. Appearing were David G. Shields, attorney for Association and Margaret W. Hudson, attorney for Debtor, Danny Rivera ("Debtor"). The

attorneys for Association and Debtor stipulated to all of the essential facts and points of law applicable to this case. However, in view of the apparent uncertainty and confusion that currently exist in the case law related to this matter, the attorneys for Debtor and Association requested that the Court enter a Memorandum Opinion. Accordingly, the Court makes the following findings of facts and conclusions of law.

## FINDINGS OF FACT

Debtor is the record owner of property legally described as:

Lot 93, SHELBY PLACE, PHASE 2, according to the plat thereof, as recorded in Plat Book 8, pages 116 and 117, Public Records of Osceola County, Florida (the "Lot").

In order for the Debtor to retain the Lot, Debtor must comply with all of the Governing Documents (a statutorily defined term, See § 617.301(6), Fla. Stat. (1999)) for the Association which by Florida Statutes include the following:

a. The Declaration of Covenants, Conditions and Restrictions for Shelby Place, recorded on September 27, 1994, in Official Records Book 1214 at Page 1011, of the Public Records of Osceola County, Florida (the "Declaration");

b. Articles of Incorporation for Shelby Place Property Owners Association, Inc., filed with the Secretary of State on September 28, 1994;

c. Bylaws of Shelby Place Property Owners Association, Inc., adopted September 26, 1994; and

d. Any amendments to the foregoing which may have or be lawfully adopted by the Association from time to time.

(collectively, the "Governing Documents"). The Governing Documents create certain rights and obligations on the part of the Debtor and the Association, including the payment of assessments by Debtor to Association. Specifically, Article V, Section 1, of the Declaration provides that each Owner of any Lot by acceptance of a deed is deemed to covenant and agree to pay assessments to the Association. The Declaration further provides that assessments, together with interest, costs and reasonable attorneys' fees incurred in enforcing or collecting any assessment, shall constitute a continuing lien upon the Lot.

Pursuant to the Declaration, Association filed a Claim of Lien on July 24, 1997, which is recorded in Book 1419, Page 2472 of the Public Records of Osceola County, Florida, in the amount of assessments then outstanding, plus subsequently accruing assessments, interest, attorney's fees and costs.

Debtor filed a bankruptcy petition under Chapter 13 of the United States Bankruptcy Code on July 16, 1998 and was converted to a case under Chapter 7 on December 6, 1999.

The Association filed a Motion to Compel Debtor to Reaffirm, to Redeem or to Surrender and to Withhold Entry of the Discharge Pending Consideration of this Motion or, Alternatively, to Dismiss. That Motion was denied by Order of April 6, 2000. A hearing on Association's Motion for Reconsideration of the Order of Denial was held on May 3, 2000.

The Court finds the Motion to Compel Debtor to Reaffirm, to Redeem, or to Surrender is unnecessary, for the reasons set forth below.

## CONCLUSIONS OF LAW

■ Association filed a Motion to Compel Debtor to Reaffirm, to Redeem or to Surrender the Lot based on the authority *Taylor v. AGE Federal Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir.1993), and *In re French*, 185 B.R. 910 (Bankr. M.D.Fla.1995). Association filed the Motion out of concern with a split of authority on the issue whether the personal obligation to pay homeowners' association assessments accruing postpetition pursuant

to a recorded declaration of covenants survives a Chapter 7 discharge. Post-petition homeowner association assessments survive the Chapter 7 discharge as a condition of continued ownership of a Lot subject to such assessment. Therefore, it is unnecessary for Association to compel the Debtor to reaffirm the obligation to pay the assessment.

"Community association" is generally used as an umbrella term to include condominium, cooperative and homeowners associations. Florida law provides for all of the three major types of community associations and the respective form of property ownership to which these associations apply. Chapter 718, Fla. Stat., provides for condominiums, a form of real property ownership which is comprised of units that may be owned by one or more persons, and in which there is, appurtenant to each unit, an undivided share in common elements of the condominium. *See* § 718.103(10), Fla. Stat. (1999). Chapter 719, Fla. Stat., provides for cooperatives, a form of real property ownership where legal title is vested in a cooperative association and the individual beneficial use is evidenced by an ownership interest in the association and a lease or other muniment of title or possession granted by the association as the owner of all the cooperative property. *See* § 719.103(9), Fla. Stat. (1999). Condominiums and cooperatives are entirely creatures of statute in Florida. Homeowners' associations exist pursuant to the Florida Not–for–Profit Corporation Act, Chapter 617, Fla. Stat. The form of property ownership to which homeowners' associations relate, however, is based primarily on the common law of real property, subject to some regulation found specifically in § 720.301–312, Fla. Stat. (2000).

All three types of community associations rely on the ability to assess property owners solely as a condition of ownership of property. Community associations generally have no source of funds with which to operate without such assessment power. The power of community associations to assess is an interest in property, a principle that is fundamental to the very existence of community associations.

There are actually three different lines of case authority on the dischargeability of postpetition assessments to community associations. One line of authority has held postpetition assessments nondischargeable because the obligation to pay assessments arises from a covenant running with the land. *See In re Rosenfeld,* 23 F.3d 833 (4th Cir.1994); *In re Lozada,* 214 B.R. 558 (Bankr.E.D.Va.1997) *aff'd* 176 F.3d 475 (4th Cir.1999); *In re Whitten,* 192 B.R. 10 (Bankr.D.Mass.1996); *In re Dalton,* 183 B.R. 127 (Bankr.S.D.Tex.1995); *Beeter v. Tri–City Property Mgmt. Servs., Inc. (In re Beeter),* 173 B.R. 108 (Bankr.W.D.Tex. 1994); *In re Gonzalo,* 169 B.R. 13 (Bankr. E.D.N.Y.1994); *In re O'Mara,* 141 B.R. 237 (Bankr.M.D.Fla.1992); *In re Raymond,* 129 B.R. 354 (Bankr.S.D.N.Y.1991); *Hill v. Windward Hills Condominium Ass'n (In re Hill),* 100 B.R. 907 (Bankr. N.D.Ohio 1989); *In re Case,* 91 B.R. 102 (Bankr.D.Colo.1988); *In re Lenz,* 90 B.R. 458 (Bankr.D.Colo.1988); *In re Harvey,* 88 B.R. 860 (Bankr.N.D.Ill.1988); *Rink v. Timbers Homeowners Ass'n I, Inc.,* 87 B.R. 653 (Bankr.D.Colo.1987); *Horton v. Beaumont Place Homeowners Ass'n (In re Horton),* 87 B.R. 650 (Bankr.D.Colo.1987); *In re Strelsky,* 46 B.R. 178 (Bankr.E.D.Va. 1985).

A second line of authority has held that postpetition assessments are dischargeable because they arose from a prepetition contract. *See In re Rosteck,* 899 F.2d 694 (7th Cir.1990); *In re Mattera,* 203 B.R. 565 (Bankr.D.N.J.1997); *In re Lamb,* 171 B.R. 52 (Bankr.N.D.Ohio 1994); *In re Affeldt,* 164 B.R. 628 (Bankr.D.Minn.1994), *aff'd,* 60 F.3d 1292 (8th Cir.1995); *In re Garcia,* 168 B.R. 320 (Bankr.E.D.Mich.1993); *Hodge v. Burke Townhouse Homeowners Ass'n (In re Hodge),* Nos. 90–10275–AT, 90–10391–AT, 1992 WL 613691 (Bankr. E.D.Va. June 30, 1992); *In re Wasp,* 137 B.R. 71 (Bankr.M.D.Fla.1992); *Cohen v. North Park Parkside Community Ass'n*

*(In re Cohen)*, 122 B.R. 755 (Bankr. S.D.Cal.1991); *In re Turner*, 101 B.R. 751 (Bankr.D.Utah 1989); *In re Elias*, 98 B.R. 332 (N.D.Ill.1989); *Behrens v. Woodhaven Ass'n (In re Behrens)*, 87 B.R. 971 (Bankr. N.D.Ill.1988); *aff'd*, 1989 WL 47409 (N.D.Ill.1989); *and appeal dismissed*, 900 F.2d 97 (7th Cir.1990).

A third line has taken a compromise position that postpetition assessments are dischargeable unless the debtor resided in or leased the unit. *See In re Ryan*, 100 B.R. 411 (Bankr.N.D.Ill.1989); *In re Pratola*, 152 B.R. 874 (Bankr.D.N.J.1993); *In re Miller*, 125 B.R. 441 (Bankr.W.D.Pa. 1991); *In re Montoya*, 95 B.R. 511 (Bankr. S.D.Ohio 1988)

In 1994, Congress attempted to resolve this split of authority by enacting Bankruptcy Code Section 523(a)(16), which provides:

> A discharge ... does not discharge an individual debtor from any debt—
>
> . . . .
>
> (16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation, but only if such fee or assessment is payable for a period during which—
>
> (A) the debtor physically occupied a dwelling unit in the condominium or cooperative project; or
>
> (B) the debtor rented the dwelling unit to a tenant and received payments from the tenant for such period, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.

Unfortunately, direct reference to homeowners' associations is missing from the statute, although the legislative history seems to imply coverage for homeowners'

associations. *See* 140 Cong. Rec. H10770 (daily ed. October 4, 1994) ("this Section amends Section 523(a) of the Bankruptcy Code to except from discharge those fees that become due to condominiums, cooperatives, or *similar membership associations* after the filing of a petition...") (emphasis supplied). *In re Lozada*, 214 B.R. at 558, extensively reviewed the legislatively history of Section 523(a)(16), including Senate floor comments and concluded Section 523(a)(16) did not extend to homeowners' associations. *In re Lozada*, 214 B.R. at 561–563. It is unnecessary to treat the obligation to pay postpetition homeowners' association assessments as an exception to discharge under Bankruptcy Code Section 523(a)(16), because the scope of the discharge pursuant to Sections 524(a) and 727(b) does not extend to this obligation.

▮▮▮ The obligation to pay homeowners' association assessments is based on a covenant running with the land, a property right. Generally, the discharge does not modify property rights. The discharge provides the release of debtors from certain obligations to creditors, including those arising from contracts and torts. The discharge does not affect a secured creditor's interest in real property. Neither § 524(a) nor § 727(b) modify property rights, whether such rights be incident to ownership, a covenant running with the land, an easement or any other right arising under the law of real property.

▮▮ Assessments are a "debt," a term within the coverage of the discharge in Bankruptcy Code Section 524. *See In re Rosteck*, 899 F.2d at 696, and its progeny, *cited supra*. Section 101(12) defines "debt" as "liability on a claim." Section 101(5) defines a "claim" as:

> (A) A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) A right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Congress intended by the Section 101(5) language to adopt a broad definition of "claim." *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). According to *Johnson,* the terminology "right to payment" within the definition of "claim" means nothing more nor less than an enforceable obligation. *Id.* at 83, 111 S.Ct. 2150. The issue in *Johnson* was whether a debtor could include a mortgage lien in a Chapter 13 bankruptcy reorganization plan once the personal obligation secured by the mortgaged property had been discharged in a Chapter 7 proceeding. *Id.* at 80, 111 S.Ct. 2150. The creditor argued that the Bankruptcy Code does not allow a debtor to include a mortgage in a Chapter 13 plan if the personal liability on the mortgage had been discharged in Chapter 7. *Id.* at 81, 111 S.Ct. 2150. The Supreme Court rejected the creditor's argument and held that the mortgage lien in such a circumstance remains a "claim" against the debtor that can be rescheduled under Chapter 13 following a Chapter 7 discharge. *Id.* at 84, 111 S.Ct. 2150. Therefore, it is possible for a mortgage lien to be a "claim" for purposes of Section 101(5), but not be subject to the Chapter 7 discharge. As pointed out by the Supreme Court:

Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor. *Johnson,* 501 U.S. at 84, [111 S.Ct. 2150].

■ At the core of the Section 101(5) definition of "claim" is the term "right to payment." The key to distinguishing a right to payment that is or is not subject to the Chapter 7 discharge is simply whether the right to payment is based on a property interest or something else. This point can be illustrated by a relatively common bankruptcy procedure: the need to file a motion under Bankruptcy Code Section 522(f) to avoid liens which impair an exemption. In the broadest sense and consistent with *Johnson,* a judgment lien is a right to payment. However, a judgment lien is also a right affecting a property interest and therefore a judgment lien is a property interest itself. In this regard, a lien is comparable to a covenant running with the land. The existence of the Section 522(f) lien avoidance procedure demonstrates that the Chapter 7 discharge does not remove a lien from property. If the Chapter 7 discharge cannot remove a lien from property, neither can it remove a recorded covenant running with that property. According to *Johnson,* a property interest coupled with a right to payment can still be a claim but not subject to the discharge.

*Johnson* does provide that the in personam liability on a mortgage is extinguished by the Chapter 7 discharge. However, there is an important distinction between a mortgage interest on property and a covenant running with the property. A covenant running with the land, including any express provision for the debtor to be personally obligated to pay the homeowners' association, is an integral part of the property which the debtor acquired when the debtor acquired title to the property. The debtor never had title clear of the previously recorded covenant running with the land. Even though a mortgage and deed may be executed simultaneously, they are separate transactions. The debtor's acceptance of a deed

and the corresponding recorded covenants, however, is one single and inseparable transaction. Therefore, to release the debtor from a recorded covenant is to take a property interest away from the homeowners' association and give the debtor a property interest which the debtor never had in the first place. Any release from a covenant would in effect be a forced conveyance of a property interest from the homeowners' association to the debtor, something clearly beyond the scope of the Chapter 7 discharge. In contrast, the in personam liability on a mortgage is a matter of contract, not part of the debtor's underlying property interest and clearly within the scope of the Chapter 7 discharge.

The United States Supreme Court has recognized there exists a distinction between the treatment of contract rights and property rights under the Bankruptcy Code. In *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Supreme Court noted that Bankruptcy Code Section 522(f)(2) "is a rational exercise of Congress' authority under Art. I, 8, cl. 4 [of the United States Constitution authorizing bankruptcy laws], and that this authority has been regularly construed to authorize the retrospective impairment of contractual obligations." *Id.* at 74, 103 S.Ct. 407. The Supreme Court in *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) held that: "[u]nder the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the states, it is not prohibited from impairing the obligations of contracts." *Id.* at 589, 55 S.Ct. 854. However, the Supreme Court in *Security Industrial Bank* went on to note the "additional difficulty that arises when the bankruptcy power is used to defeat traditional property interests," because the "bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." *Security Industrial Bank* at 75. A homeowners' association's right to impose postpetition assessments pursuant to a recorded Declaration of Covenants and Restrictions is within the scope of the traditional property interests protected by the Fifth Amendment.

A declaration of covenants is not an executory contract because: (1) "rejection" would not constitute a breach relieving the debtor of the debtor's obligation to perform; (2) because a covenant is a property interest and not a contract, it is not capable of rejection; and (3) a debtor cannot simultaneously accept the benefits and reject the burdens of an executory contract, but if a debtor could reject covenants, there is no mechanism by which the debtor can give up the corresponding benefits other than conveyance of title to the property. *See Beeter*, 173 B.R. at 113–16. *See Raymond*, 129 B.R. at 357–59. "Homeowners association assessments are a square real-estate 'peg' that sensibly should not be 'forced' into the 'round hole' of the law of contracts." *See Beeter*, 173 B.R. at 113–16.

The Fourth Circuit Court of Appeals has addressed the effect of the Chapter 7 discharge on the personal obligation to pay homeowners' association assessments postpetition. In the case of *In re Rosenfeld*, 23 F.3d at 837, the Fourth Circuit held:

Under the Declaration, the obligation to pay assessments is a function of owning the land with which the covenant runs. Thus, Rosenfeld's obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a pre-petition contractual obligation [citations omitted]...[The homeowners' association's] right to payment for post-petition assessments did not arise pre-petition and was not extinguished by Rosenfeld's bankruptcy discharge.

The Rosenfeld approach is persuasive and consistent with the Eleventh Circuit's view that a debtor may not enjoy the benefits of maintaining possession of property without the personal liability that originally accom-

panied the property. In *Taylor*, 3 F.3d at 1516, the Eleventh Circuit held:

> Allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a "fresh start" but a "head start" since the debtor effectively converts his secured obligation from recourse to non recourse with no downside risk for failing to maintain or insure the lender's collateral.

In *Taylor*, the Eleventh Circuit's holding pertained to whether 11 U.S.C. § 521(2) permits a Chapter 7 debtor to retain *personal property* without reaffirming or redeeming the property if the debtor continues to perform according to the repayment provisions of the note and underlying contract. The Court reasoned that requiring a debtor to reaffirm or redeem would prevent a debtor from forcing on a creditor a de facto reaffirmation agreement with no recourse by retaining the property and maintaining current payments without a reaffirmation or redemption.

The Eleventh Circuit's holding in *Taylor* applies to personal property.[1] It is not necessary to extend the holding in *Taylor* to a debtor who retains real property subject to a homeowners' association assessment without reaffirming or redeeming, since the Debtor's personal liability is based on a covenant running with the land. The key principle from *Taylor* is debtors should not be able to enjoy the benefits of maintaining possession of property without the personal liability that originally accompanied the property. This principle also serves as a basis for the holding in *Rosenfeld*. The ultimate result in both *Rosenfeld* and *Taylor* is the debtor must be personally liable if the debtor intends on maintaining possession of the property. *Rosenfeld* is therefore consistent with the Eleventh Circuit's policy as set forth in *Taylor*.

*Rosenfeld* provides a more practical approach to the handling of cases than the contrary lines of authority. The alterna-

tive cases to *Rosenfeld* would appear to necessitate homeowners' associations to seek a reaffirmation agreement in every Chapter 7 case involving one of their members.

■ Both the in rem and personal obligation to pay postpetition assessments to homeowners' associations pursuant to a recorded declaration of covenants survives a Chapter 7 discharge, even without a reaffirmation agreement, unless the debtor timely relinquishes possession and ownership of the property subject to the obligation.

A Chapter 7 debtor desiring relief of the personal obligation to pay assessments accruing postpetition to homeowners' associations, should follow the procedures for filing and carrying out the statement of intent to surrender the property within the time limits contemplated by Bankruptcy Code Section 521(2). The debtor should then cooperate with the Chapter 7 trustee, the homeowners' association or other creditors secured by the property to be surrendered, as appropriate, such that the debtor relinquishes possession and ownership of the property within a reasonable time.

The debtor may be held responsible for postpetition assessments, subject to further determination of the Bankruptcy Court, if the debtor deliberately engages in unreasonable delay. A party in interest may address the particular problem with the Bankruptcy Court as necessary or appropriate, if the facts of a particular case create uncertainty whether the debtor remains responsible for postpetition assessments. The debtor's obligation to pay assessments ceases accruing no later than the debtor relinquishing ownership and possession of the property.

Based on the foregoing, Association does not need to obtain a reaffirmation agreement from Debtor to preserve the Association's rights under the Governing Docu-

---

1. The analysis does not extend to real property because redemption pursuant to § 722 is inapplicable to real property. *In re Laubacher*, 150 B.R. 200 (Bankr.N.D.Ohio 1992).

ments to collect postpetition assessments as a personal and in rem obligation from the Debtor. Accordingly, Association's Motion for Reconsideration of Order denying Motion to Compel Debtor to Reaffirm, to Redeem, or to Surrender, and to Withhold Entry of the Discharge Pending Consideration of this Motion or Alternatively to Dismiss is denied as moot and unnecessary.