

# FILED

DEC 01 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

In re:                                ) BAP No.   WW-14-1557-KiFJu
                                      )
MICHAEL BATALI and                    ) Bk. No.   11-10114
KELLIE BATALI,                        )
                                      )
                  Debtors.            )
_____        )
                                      )
MICHAEL BATALI;                       )
KELLIE BATALI,                        )
                                      )
                  Appellants,         )
                                      )
v.                                    ) **M E M O R A N D U M**[1]
                                      )
MIRA OWNERS ASSOCIATION,               )
                                      )
                  Appellee.            )
_____        )

Argued and Submitted on September 25, 2015,
at Seattle, Washington

Filed - December 1, 2015

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding

Appearances:    Richard J. Wotipka of Broihier & Wotipka argued for
                appellants Michael and Kellie Batali; Thomas J. Coy
                of Condominium Law Group PLLC argued for appellee
                Mira Owners Association.

Before:   KIRSCHER, JURY and FARIS, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Debtors Michael and Kellie Batali ("Debtors") appeal an order denying the discharge of their postpetition condominium association assessments. For the reasons discussed, we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts are undisputed.[2] Debtors filed their voluntary chapter 13[3] petition on January 6, 2011. On schedule A, Debtors listed, in addition to their residence and undeveloped land, an investment condominium located in Kirkland, Washington ("Kirkland Condominium") with a value of $225,000. Debtors' schedules also disclosed that Bank of America, N.A. held two liens against the Kirkland Condominium originating from a first and second mortgage. Debtors also listed "Mira Condominium Owners" as a secured creditor with a lien against the Kirkland Condominium, describing the lien as:

> Lien: condo assoc. statutory lien
> Security: [Debtors'] investment condominium
> Past Homeowners Dues & Water/Sewer

Debtors did not list the debt owed to "Mira Condominium Owners" as contingent, unliquidated or disputed. Debtors did not schedule any postpetition assessments as potential liabilities or contingent future obligations.

Debtors' statement of monthly net income contained on their

---

[2] Because the record did not include some relevant documents, we exercised our discretion to reach the merits of the appeal by independently reviewing the bankruptcy court's electronic docket and the imaged documents attached thereto. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

schedule J disclosed their average monthly income as $18,874.00 and their average monthly expenses as $21,420.42, which included monthly installment payments of $2,846.00 on the Kirkland Condominium.

Debtors' revised first amended chapter 13 plan ("Amended Plan") filed September 9, 2011, did not provide for any postpetition payments either within the plan or outside the plan on the Kirkland Condominium and provided for the surrender of that property. The Amended Plan provided: payments over sixty months; that the Kirkland Condominium would be surrendered to Bank of America, N.A. and "Mira Condominium Owners" upon confirmation; and that "all creditors to which the debtor is surrendering property pursuant to this section are granted relief from the automatic stay to enforce their security interest against the property including taking possession and sale[.]" The bankruptcy court confirmed the Amended Plan on October 28, 2011.

The bankruptcy court granted relief from the automatic stay to the secured lender on the Kirkland Condominium on September 9, 2013, thereby permitting the secured lender to foreclose upon and obtain possession of the Kirkland Condominium. The secured lender foreclosed on the Kirkland Condominium on July 25, 2014. Likewise, on February 6, 2014, Mira Owners Association ("MOA") sought "relief from the automatic stay for purposes of pursuing a judgment against the Debtor for [postpetition] assessments, dues, costs, fees, and other charges." MOA attached a copy of the CONDOMINIUM DECLARATION FOR MIRA, A CONDOMINIUM ("Declaration") to its motion to modify stay. The Declaration, recorded in King County, Washington, on December 20, 2006, provides: in

-3-

Section 17.1, that MOA "has a lien on a Unit for any unpaid Assessment levied against a Unit from the time the Assessment is due[;]" and in Section 17.5, that "all sums assessed by the Association chargeable to any Unit, including all charges provided in this Article, shall be the personal obligation of the Owner of the Unit when the Assessment is made." Debtors did not oppose MOA's motion. On March 5, 2014, the bankruptcy court entered an order granting MOA relief from the automatic stay.[4] That order specifically provided:

> 1. In addition to the relief from stay accorded against the property pursuant to Debtors' Chapter 13 Plan, Paragraph V, the automatic stay of [] § 362(a) shall be and hereby is terminated as to Creditor so that Creditor may enforce its rights at state law stay [sic] for purposes of pursuing a judgment against the Debtors for [postpetition] assessments, dues, costs, fees, and other charges.

On April 8, 2014, MOA sent Debtors a letter demanding that

---

[4] MOA asserted in its motion to modify stay that Debtors owed $17,218.41 in postpetition arrears. MOA also maintained:

> Creditor is a Washington nonprofit corporation and is the community association for The Mira Condominium.

> \* \* \*

> Pursuant to Creditor's recorded condominium declaration and [WASH. REV. CODE ("RCW") §] 64.34.364, Creditor has a statutory lien which arises automatically and is perfected at the time assessments come due, and which lien acts as security for its debt against the property.

> \* \* \*

> Debtor's obligation to pay [postpetition] assessments is an obligation arising out of a covenant running with the land, and is not subject to the discharge. Foster v. Double R Ranch Ass'n (In re Foster), 435 B.R. 650 (9th Cir. BAP 2010). Debtor is personally liable for all [postpetition] assessments coming due until such time as the property is foreclosed on, and such assessments are not affected by the bankruptcy. Id.

-4-

they pay $26,507.96 in postpetition condominium association dues, fees and interest through May 12, 2014. On or about August 25, 2014, MOA filed an action against Debtors in the Superior Court of the State of Washington, King County, seeking an award of "$28,672.30 for past due assessments, fees, interest, and attorney's fees and costs, plus interest and attorney's fees and costs which become due before entry of judgment, together with interest[.]"

Thereafter, Debtors filed on October 8, 2014, a motion seeking a determination that: (1) the postpetition condominium association dues for the Kirkland Condominium would be discharged by Debtors' chapter 13 discharge; and (2) Debtors' confirmed Amended Plan eliminated MOA's right to assert a claim against Debtors for postpetition assessments. MOA opposed Debtors' motion.

The bankruptcy court orally denied Debtors' motion at a hearing held November 6, 2014.[5] The bankruptcy court, adopting the reasoning set forth by the Panel in Foster v. Double R Ranch Ass'n (In re Foster), 435 B.R. 650 (9th Cir. BAP 2010), concluded that the "ongoing ownership of property with a running covenant creates a postpetition claim even if the debtor does not use the property." The bankruptcy court then rejected Debtors' res

---

[5] At the hearing, the bankruptcy court noted that the determination of whether a debt is dischargeable is a matter generally determined in an adversary proceeding. Debtor and MOA both waived the procedural elements afforded by Rule 7001 and agreed that the bankruptcy court could decide Debtors' motion as a contested matter. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010) ("Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'").

-5-

judicata argument, concluding that the confirmed Amended Plan did "not effectuate a transfer of the property[,]" and did not expressly provide for the discharge of any postpetition condominium association dues. The bankruptcy court entered a written order on November 13, 2014, which memorialized its oral ruling by providing that "the [Debtors' postpetition] homeowner assessments are not subject to discharge in this case."

Debtors timely appealed. Debtors also sought reconsideration of the bankruptcy court's November 13, 2014 order. On February 20, 2015, the bankruptcy court granted Debtors' request for reconsideration and entered a revised order that confined its ruling solely to the dischargeability of postpetition assessments in Debtors' chapter 13 bankruptcy case.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

1. Whether Debtors' confirmed Amended Plan discharged Debtors' postpetition condominium association dues.

2. Whether postpetition condominium association dues on property surrendered under the terms of a confirmed chapter 13 plan are dischargeable under § 1328(a).

## IV. STANDARDS OF REVIEW

In reviewing a bankruptcy court's determination of an exception to discharge, we review its findings of fact for clear error. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). We review issues of statutory construction and conclusions of law de novo. Mendez v. Salven (In re Mendez),

-6-

367 B.R. 109, 113 (9th Cir. BAP 2007).

## V. DISCUSSION

Debtors contend that three issues exist on appeal: (1) that the confirmed Amended Plan will discharge the postpetition condominium association dues owed to MOA and that the plan is res judicata; (2) that the postpetition condominium association dues will be discharged under § 1328(a); and (3) that the bankruptcy court inappropriately ruled that Debtors' postpetition condominium association dues would not be dischargeable under chapter 7 of the Bankruptcy Code. The bankruptcy court's Amended order entered February 20, 2015, renders Debtors' third argument on appeal moot and we will not discuss this issue further.

### A.   Binding Effect of Confirmation

Debtors argue that the terms of their confirmed Amended Plan bind MOA and will result in the discharge of MOA's claim for postpetition condominium association dues. The premise of this argument is correct. Section 1327(a) provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

§ 1327(a); Fadel v. DCB United LLC, Tr. of the Eisenhower UDT 7-22-11 (In re Fadel), 492 B.R. 1, 9-10 (9th Cir. BAP 2013). The bankruptcy court confirmed the Amended Plan on October 28, 2011. MOA had notice of the Amended Plan and did not object. Thus, the confirmed Amended Plan is binding upon MOA.

However, Debtors' confirmed Amended Plan made no mention of discharging Debtors' postpetition liability to MOA and thus cannot bind MOA with respect to the dischargeability of the postpetition

assessments. Simply stated, MOA received neither the notice nor the due process required by the Rules and Espinosa for a discharge of Debtors' postpetition condominium association dues.

The Panel further notes that the bankruptcy court granted MOA relief from the automatic stay on March 5, 2014, so MOA could specifically "pursu[e] a judgment against the Debtors for [postpetition] assessments, dues, costs, fees, and other charges." The March 5, 2014 order is directly at odds with Debtors' argument here. Debtors did not seek reconsideration of or appeal that order, which is now final.

**B.    Discharge of Postpetition Condominium Association Dues Under § 1328(a)**

The record does not establish whether Debtors have completed their Amended Plan's payments and are now eligible for a discharge under § 1328(a). A prerequisite to the discharge on any debt under § 1328(a) is that Debtors complete all the payments due under the terms of their confirmed Amended Plan.[6]  See e.g., In re Khan, 504 B.R. 409, 413 (Bankr. D. Md. 2014) ("Until the discharge is entered, Debtor is stuck for the payment of [his postpetition condominium association fees].").

The issue of whether postpetition homeowner or condominium association assessments are dischargeable has been litigated through several cases.  See e.g., In re Horton, 87 B.R. 650, 652 (Bankr. D. Colo. 1987) (a chapter 7 debtor's postpetition homeowners' association assessments were not discharged; "[t]he

---

[6] If this case were converted to chapter 7 or if Debtors were to seek a hardship discharge under § 1328(b), the Panel's analysis would not be necessary as the matter would be governed by statute.

-8-

benefits of owning property go hand in hand with the burdens arising from ownership"); In re Rink, 87 B.R. 653, 654 (Bankr. D. Colo. 1987) (postpetition condominium assessments are not discharged, but "the estate is responsible for any [postpetition] condominium assessments which arise during the administration of the estate"); In re Montoya, 95 B.R. 511, 513 (Bankr. S.D. Ohio 1988) (In a chapter 7 case, the "fees assessable against a debtor pursuant to a declaration of condominium ownership and the by-laws of a unit owner association may be discharged as an unmatured claim where the debtor abandons the condominium and all rights associated with such ownership before or upon the bankruptcy filing"); and In re Elias, 98 B.R. 332, 337 (N.D. Ill. 1989) ("[C]ondominium assessments that accrue postpetition but arise out of a prepetition contract are 'debts' within the meaning of [§] 101(11) and are dischargeable in a Chapter 7 proceeding.")

In 1990, the Seventh Circuit Court of Appeals, in In re Rosteck, 899 F.2d 694, 695 (7th Cir. 1990), considered in a chapter 7 case "whether the bankruptcy court's December 1983 discharge order discharged the Rostecks' obligation to pay [postpetition] condominium assessments" for a condominium in which the debtors did not reside. The court in Rosteck answered that question by examining when the debt arose. Id. According to that court, the condominium declaration was a prepetition contract from which the postpetition assessments arose. Id. at 696-97. Consequently, because the debtors' "debt for future assessments, based on their [prepetition] agreement to pay those assessments, existed when they filed their bankruptcy petition, that debt was discharged by the bankruptcy court in its discharge order." Id.

-9-

at 697.  The condominium association in Rosteck argued that allowing debtors in bankruptcy to escape postpetition assessments, while still possibly residing in their homes, afforded debtors a "head start" rather than a "fresh start."  Id.  The Rosteck court admitted that its decision could be "troubling" but reasoned:

> [W]e think the broad language Congress used in the Bankruptcy Code compels the result we reach.  We have no power to change that language to reach a more palatable result.  Contingent debts are still debts, and Congress has not exempted the type of debt in this case from discharge.

Id.  Other courts reached a similar conclusion, See, e.g., In re Cohen, 122 B.R. 755, 758 (Bankr. S.D. Cal. 1991); In re Garcia, 168 B.R. 320, 324-25 (Bankr. E.D. Mich. 1993).

In 1994, the Fourth Circuit Court of Appeals considered facts similar to those in Rosteck and reached a different conclusion on the issue of whether "a discharge in bankruptcy relieves a debtor from personal liability for [postpetition] assessments of cooperative housing dues."  River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld), 23 F.3d 833, 835 (4th Cir. 1994). The chapter 7 debtor in Rosenfeld did not live in the property and, in fact, had signed a consent order granting the mortgage lienholder relief from the automatic stay.  Id.  The debtor, however, retained ownership of the property.  Id.  The court in Rosenfeld, like the court in Rosteck, first considered the definition of the terms "debt" and "liability on a claim."  Id. at 836.  But the court in Rosenfeld declined to follow Rosteck and its progeny, which held that an association's right to payment of dues arises when the contract is made and is contingent on the debtor's continued ownership of the property, and instead

-10-

concluded that postpetition assessments do not arise until they are assessed. The court in <u>Rosenfeld</u> reasoned that "the obligation to pay assessments is a function of owning the land with which the covenant runs" and the "obligation to pay the assessments arose from [the debtor's] continued ownership of the property and not from a [prepetition] contractual obligation." <u>Id.</u> The court in <u>Rosenfeld</u> explained:

> [The debtor's] personal liability under the covenant to pay assessments is not destroyed by River Place's access to alternative remedies, and even if Rosenfeld has not exercised the benefits of ownership, as title holder he has the legal right to do so. In order to terminate his responsibility for assessments, Rosenfeld must transfer title to the property, if necessary by a deed in lieu of foreclosure. <u>In re Horton</u>, 87 B.R. at 652; <u>In re Rink</u>, 87 B.R. at 654. His consent to an order granting the mortgage holder relief from the automatic stay did not end his ownership.

<u>Id.</u> at 838.

In 1994, Congress responded to <u>Rosteck</u>[7] and its progeny by adding § 523(a)(16) to the Code. The Bankruptcy Reform Act of 1994 became Public Law No. 103-394 on October 22, 1994, and excepted from discharge under §§ 727, 1141, 1228(a), 1228(b) or 1328(b):

> [A] fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a dwelling unit that has condominium ownership or in a share of a cooperative housing corporation, but only if such fee or assessment is payable for a period during which—
>
> > (A) the debtor physically occupied a dwelling unit in the condominium or cooperative project; or

---

[7] Legislative history indicates that The Bankruptcy Reform Act of 1994 was in the drafting stages as early as January of 1994. Also, statements made on October 4, 1994, at 140 Cong. Rec. H. 10753 cite only <u>Rosteck</u>. It logically follows that the addition of § 523(a)(16) to the Code was a response to <u>Rosteck</u> and its progeny, and not a response to <u>Rosenfeld</u>.

-11-

> (B) the debtor rented the dwelling unit to a tenant and received payments from the tenant for such period,

> but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case.

Section 523(a)(16) remained unchanged until the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8 Stat. 23 § 442 (Apr. 20, 2005), when Congress amended § 523(a)(16) to include homeowners' associations and to delete the requirement that debtors physically reside in or collect rents from the unit. Section 523(a)(16) now excepts from discharge:

> [A] fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case[.]

After § 523(a)(16) was added to the Code in 1994, and putting aside the issue concerning homeowner associations, the primary area of litigation concerning § 523(a)(16) shifted to chapter 13 bankruptcy cases.

In 1997, a bankruptcy court considered whether postpetition time-share assessments relating to a surrendered time-share interest were discharged in a debtor's chapter 13 bankruptcy. In re Mattera, 203 B.R. 565 (Bankr. D.N.J. 1997). Following the language of § 1328(a), the court in Mattera framed the issue as

-12-

two-fold: "[W]hether the association's [postpetition] assessments constitute a 'debt' under [] § 1328(a), and, if so, whether that debt has been 'provided for' by debtor's Chapter 13 plan." Id. at 570. The court, believing "that the Rosteck opinion best reflect[ed] a plain reading of the statutory definition of 'claim'" and interpreting the terms "debt" and "claim" broadly, concluded:

> [A]t the time of the filing of debtor's Chapter 13 petition, the obligation of the debtor to Ocean High for [postpetition] assessments was a contingent, unmatured, unliquidated, unfixed right to payment which constituted a "claim" and a "debt" for § 1328(a) discharge purposes. The claim was contingent upon the retention of ownership by the debtor, and the regular assessment of fees by the association. The claim was not fixed in terms of a certain and definite amount due at the time of the filing of the petition. The debt would mature each month as assessments were made by the association.

Id. at 571. The Mattera court went on to explain:

> Our conclusion that [postpetition] assessments constitute claims within the definition of [] § 101(5) and may, therefore, be discharged as an in personam obligation of the debtor does not mean that if the debtor continues to use the unit and/or receives benefit from it, that she may do so without compensating the association. While this factual scenario is not directly implicated here because debtor has certified that she did not use or benefit from the time-share following the filing of the petition, liability for [postpetition] use and occupancy, on theories of unjust enrichment and/or quantum meruit, might be available. See, e.g., In re Lamb, 171 B.R. 52, 55 (Bankr. N.D. Ohio 1994).

Id. at 572. As to the second prong of the issue, the court in Mattera concluded that the debtor's postpetition assessments were provided for in the plan because debtor's plan provided for the surrender of the time-share and specifically listed the time-share association as a secured creditor. Id.

Years later, in a factual scenario alluded to but not present

-13-

in Mattera, the Ninth Circuit Bankruptcy Appellate Panel addressed whether a chapter 13 "debtor's obligation to pay [homeowners' association ("HOA")] dues after the order for relief [was] an affirmative covenant that runs with the land, unaffected by debtor's discharge, or [was] it . . . a contractual obligation between the parties, making it a dischargeable prepetition debt." In re Foster, 435 B.R. at 658. Importantly, the debtor in Foster did not intend to surrender his home, but instead, merely sought to discharge his postpetition homeowner association dues.

The debtor in Foster raised two arguments on appeal. The first argument involved whether § 523(a)(16) is applicable to § 1328(a); the parties conceded that § 523(a)(16) was inapplicable to a discharge under § 1328(a). Id. at 657-58. The second argument involved whether the postpetition HOA dues constituted prepetition debts that arose out of a prepetition contract. Id. In addressing the debtor's second argument, the Panel in Foster did not answer the specific question of "[w]hether the omission of § 1328(a) in § 523(a)(16) or vice versa [was] a statutory misstep." Id. at 659. Instead, the Panel concluded that "[u]nder Washington law, the affirmative covenant to pay HOA dues is not contractual, but is a covenant running with the land. As such, debtor's personal liability for the dues is an incidence of ownership of his property not affected by the filing of his bankruptcy." Id. at 653.

In reaching its decision, the Panel first examined Rosteck, Rosenfeld and the history of § 523(a)(16). Because of the broad dischargeability provisions afforded chapter 13 debtors, the Panel expressed its "doubt [that] the omission of § 1328(a) in

-14-

§ 523(a)(16) or vice versa evinces a legislative intent to discharge postpetition HOA dues under § 1328(a) when the debtor used the cure and maintenance provisions under chapter 13 to stay in his or her property." 435 B.R. at 559.

The Panel in Foster then examined Washington law and concluded:

> [U]nder Washington law and the Declaration, debtor's obligation to pay the HOA dues was a function of owning the land with which the covenant runs and not from a prepetition contractual obligation. As such, the holding in Rosenfeld is persuasive. It follows that debtor's liability is "not 'rooted in the [prebankruptcy] past', but rather [is] rooted in the estate in property itself."

Id. at 660-61 (quoting Beeter v. Tri-City Prop. Mgmt. Servs., Inc. (In re Beeter), 173 B.R. 108, 122 (Bankr. W.D. Tex. 1994)). The Panel concluded that the Rosenfeld approach was consistent with the RESTATEMENT (THIRD) OF PROPERTY. Id. at 661. And finally, the Panel in Foster noted the different treatment of property rights and contract rights under the Bankruptcy Code:

> While a debtor's personal obligation under a contract may be discharged in most instances, "bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." In re Rivera, 256 B.R. 828, 834 (Bankr. M.D. Fla. 2000) (quoting United States v. Sec. Indus. Bank, 459 U.S. 70, 75 [] (1982)). "A homeowners' association's right to impose postpetition assessments pursuant to a recorded Declaration of Covenants and Restrictions is within the scope of the traditional property interests protected by the Fifth Amendment." Rivera, 256 B.R. at 834.
>
> Although § 101(5)(A) defines a "claim" as a "right to payment", "[t]he key to distinguishing a right to payment that is or is not subject to . . . discharge is simply whether the right to payment is based on a property interest or something else." Id. at 833. Since Washington law does not view the Declaration as a contract (or "something else") and the affirmative covenant to pay HOA dues is one that runs with the land, it follows that the Association's right to payment of

-15-

unassessed postpetition HOA dues is based on a property interest not subject to discharge under § 1328(a). The Rivera court explained the reason for this rule:

> A covenant running with the land, including any express provision for the debtor to be personally obligated to pay the homeowners' association, is an integral part of the property which the debtor acquired when the debtor acquired title to the property. The debtor never had title clear of the previously recorded covenant running with the land. Even though a mortgage and deed may be executed simultaneously, they are separate transactions. The debtor's acceptance of a deed and the corresponding recorded covenants, however, is one single and inseparable transaction. Therefore, to release the debtor from a recorded covenant is to take a property interest away from the homeowners' association and give the debtor a property interest which the debtor never had in the first place. Any release from a covenant would in effect be a forced conveyance of a property interest from the homeowners' association to the debtor, something clearly beyond the scope of the Chapter 7 discharge.

Rivera, 256 B.R. at 833–34.

> Accordingly, we hold that, as a matter of law, debtor's personal liability for HOA dues continues postpetition as long as he maintains his legal, equitable or possessory interest in the property and is unaffected by his discharge. In essence, the 'running' covenant rule in this case boils down to one of 'you stay, you pay' since debtor's confirmed plan indicates he will stay in his home by curing prepetition default on his mortgage and maintain on-going payments through his confirmed Chapter 13 plan.

Foster, 435 at 661.

Under Washington law, the Foster Panel found that a recorded condominium declaration, such as MOA's, runs with the land and is a property right that cannot be extinguished in a bankruptcy. The "you stay, you pay" rule is the logical extension of that finding; as long as a debtor continues to have an interest in the property at issue, he cannot discharge the postpetition assessments that arise from the covenant that runs with the property.

-16-

Debtors construe Foster's holding as simply one of "you stay, you pay," and argue it is not controlling because Debtors have not occupied the Kirkland Condominium during the postpetition period and have indicated their intent to surrender it pursuant to the terms of their confirmed Amended Plan. Rather, citing In re Coonfield, 517 B.R. 239 (Bankr. E.D. Wash. 2014), Debtors argue that "[MOA's] claim for the ongoing assessments that are at issue . . . is merely the 'contingent", 'unmatured' and 'unliquidated' portion of [MOA]'s pre-petition claim and its status as a debt for purposes of discharge under []§ 1328(a) is not dependant on characterization of the obligation as one arising from 'a covenant running with the land' versus one 'flowing from a contract.'"

The court in Coonfield held that the chapter 13 debtors could discharge their postpetition homeowner association dues, reasoning:

> A contrary interpretation of the law divests [] § 523(a)(16) of significance. If personal liability on such obligations arise [postpetition] as the Homeowners Association urges, [§] 523(a)(16) is rendered meaningless and simply restates a principle already infused in bankruptcy law; i.e., that a right to payment arising [postpetition] is not subject to discharge.

Id. at 243. Coonfield's reasoning is not persuasive. First, Coonfield runs contrary to our precedent in Foster. Moreover, as discussed earlier, Congress added § 523(a)(16) to the Code in response to Rosteck, which held that the debtors' postpetition condominium assessments were discharged because they were debts stemming from a prepetition contractual obligation. Congress's concern with Rosteck's holding could only be that the postpetition assessments were not debts, or if they were debts, that they were

-17-

not prepetition debts. This highlights the flaw in Coonfield's analysis, and also the ambiguity created by the absence of a reference to § 523(a)(16) in § 1328(a)(2).

Foster is well-reasoned and consistent with canons of statutory construction set forth by both the Supreme Court and the Ninth Circuit Court of Appeals. Foster dictates that the Debtors in this case may not extinguish MOA's recorded Declaration and may not discharge their postpetition assessments, even though they did not reside in the Kirkland Condominium postpetition. Unlike the court in Coonfield, the Panel in Foster was not persuaded "that § 523(a)(16) establishes generally that postpetition HOA dues constitute 'claims' or 'debts' which can be discharged [under § 1328(a)]." Foster, 435 B.R. at 659. The Panel's reasoning in Foster was two-fold. Id. First, § 523(a)(16) is not applicable to a discharge under § 1328(a), and second, "state law governs the substance of claims." Id. As discussed earlier, the Panel in Foster found the holding in Rosenfeld persuasive and concluded that under Washington law, "the HOA dues [were] a function of owning the land with which the covenant runs" and as a consequence, "the Association's right to payment of unassessed postpetition HOA dues is based on a property interest not subject to discharge under § 1328(a)." Id. at 660-61.

Foster holds that the nondischargeable liability continues to accrue "as long as [the debtor] maintains his legal, equitable **or** possessory interest in the property . . . ." Id. at 661 (emphasis added). While the Debtors had given up possession of the Kirkland Condominium, they had not divested themselves of their legal and equitable ownership interests in it. As the bankruptcy court

-18-

correctly noted, surrender under the plan "[did] not effectuate a transfer of the property." See Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 18-19 (1st Cir. 2006); In re Rosa, 495 B.R. 522, 523 (Bankr. D. Haw. 2013) ("surrender does not transfer ownership of the surrendered property. Rather, 'surrender' means only that the debtor will make the collateral available so the secured creditor can, if it chooses to do so, exercise its state law rights in the collateral"); In re Gollnitz, 456 B.R. 733, 736 (Bankr. W.D.N.Y. 2011) ("Authorization for surrender does not constitute a transfer of title. Rather, transfer requires both the surrender of an interest and its acceptance."). Subject to exceptions not applicable here, under Washington law, "[e]very conveyance of real estate, or any interest therein . . . shall be by deed[.]" RCW § 64-04.010. To qualify as a deed, an instrument must comply with RCW § 64.04.020, which requires that "[e]very deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds." The confirmed Amended Plan does not substitute for a deed.

Under the facts as presented, Debtors were the owners of the Kirkland Condominium until July 25, 2014, when the secured lender foreclosed. As such, the postpetition condominium association dues assessed between Debtors' petition date and July 25, 2014, are not discharged under § 1328(a).

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the ruling of the bankruptcy court.

-19-